OPINION OF THE COURT
 

 Ciparick, J.
 

 This appeal requires us to consider the nature and extent of the tort liability of a school district based on the theory of negligent supervision for injuries caused to plaintiffs by the intentional acts of a fellow student.
 

 Defendant Board of Education appeals from an order of the Appellate Division which reversed a judgment of Supreme Court granting defendant’s motion to set aside the jury verdict in plaintiffs’ favor and dismissing the complaint. The Appellate Division reinstated the verdict.
 

 Defendant argues that the trial court properly set aside the jury verdict as a matter of law since there was no valid line of reasoning nor any permissible inferences which could lead rational minds to find for the plaintiffs. We conclude that the jury verdicts were supported by sufficient evidence and the order of the Appellate Division should be affirmed.
 

 I
 

 Plaintiffs Virna and Vivia Mirand, sisters, were students at Harry S. Truman High School in the Bronx at the time of the incident giving rise to this action. According to Virna’s testimony, on September 20, 1982, she was released from her last class at 2:00 p.m. and went to wait for her sister, whose last class ended at 2:40 p.m., at their usual meeting place. On the way there, Virna accidentally bumped into Donna Webster, another student with whom Virna had not had any previous encounters. Although Virna apologized, Webster, believing the contact to be intentional, cursed Virna and attempted to kick her. Virna blocked the kick and caught Webster’s leg. According to Virna, Webster threatened to kill her. At that point a bystander intervened and prevented anything further from occurring.
 

 Virna proceeded to the first floor of the school where by chance she met her sister who was going to her last class.
 
 *47
 
 Webster was a student in Vivia’s class and Vivia suggested that Virna report the altercation to the security office. Virna proceeded to the security office, which was located on the first floor near the building entrance, and knocked on the door. She received no response. Virna testified that as she was walking down a first-floor hallway she met a woman she knew to be an art teacher but whose name she could not recall. She told the teacher of the altercation with Webster, that Webster had threatened her, and that there was no one in the security office. Virna was not allowed to testify regarding what the art teacher said in response. Virna conceded at this point that, in an examination before trial made six years earlier, she had not mentioned her meeting with the art teacher.
 

 According to Virna, after her encounter with the art teacher, she returned to the security office, where again she knocked on the door and received no response. She then went to the second floor and left the building through the main entrance to wait for her sister on the building veranda where school security officers were sometimes present. None were present on that day. Vivia eventually arrived about a half-hour later and the two proceeded to descend the staircase when they found their path blocked by Webster and two male companions. Although the sisters tried to avoid her, Webster approached Virna and struck her on the elbow and head with a hammer. When Vivia tried to seize the hammer, she was hit in the back by an unknown girl. One of the males with Webster, a nonstudent, later identified as her brother, stabbed Vivia through the wrist with a knife. No security or police officers were present during the incident. The sisters were taken to a hospital. Virna was treated and released. Vivia’s hand was operated on and placed in a cast. She spent seven days in the hospital. Since then she has undergone further surgery and hospitalization together with physical therapy. She experiences pain in her injured hand and has limited movement and use of it.
 

 At trial, the evidence concerning general security measures at Truman High School disclosed that in the fall of 1982 there were 13 trained school safety officers assigned to the school. They wore uniforms, carried radios, and operated out of the school’s first-floor security office. There was also a first-floor security desk located by the main entrance to which an officer was assigned at all times. The security officers were assigned throughout the building and were expected to cover the building’s exits at dismissal time. According to the school’s security
 
 *48
 
 plan, two to five officers were assigned to the second-floor main entrance at dismissal, although they were not required by the plan to be on the second-floor veranda outside. Teachers were also expected to assist in providing security by using their independent judgment with minor matters and seeking the assistance of other personnel with more serious incidents. At trial, the school’s security coordinator could not recall how many fights had occurred at the school during the preceding year nor whether security officers were at their posts at dismissal time on the day in question.
 

 The jury found that defendant Board of Education negligently failed to provide adequate supervision and awarded plaintiff Virna Mirand $50,000 for past pain and suffering, and Vivia Mirand $750,000 for her past and future pain and suffering. Defendant Board moved to set aside the verdict in plaintiffs’ favor and to dismiss the complaint. Supreme Court granted the motion and dismissed plaintiffs’ complaint, concluding that plaintiffs had not established that defendant Board was on notice of a specific danger, and that there was a failure of proof concerning inadequate supervision and proximate cause.
 

 The Appellate Division reversed the judgment of Supreme Court, denied the motion to set aside the verdict in plaintiffs’ favor, and reinstated the verdict. The Appellate Division concluded that in light of the record, the jury "could find that the Board, having recognized the need for and put into effect a security plan, breached its duty to provide plaintiffs with adequate supervision at a time when such supervision was most critical,” and that the school, "through one of its teachers, was made aware of a specific threat against Virna by a known identifiable student and did nothing about it other than to send her back to the security office, which, at the time, was still closed”
 
 (Mirand v City of New York,
 
 190 AD2d 282, 289).
 

 II
 

 Where, as here, a jury verdict is set aside on the ground that, as a matter of law, it is not supported by
 
 sufficient
 
 evidence, and the Appellate Division reverses, the matter is reviewable, the relevant inquiry being whether "there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion
 
 *49
 
 reached by the jury on the basis of the evidence presented at trial”
 
 *
 

 (Cohen v Hallmark Cards,
 
 45 NY2d 493, 499).
 

 Ill
 

 Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision
 
 (see, e.g., Lawes v Board of Educ.,
 
 16 NY2d 302, 306;
 
 Decker v Dundee Cent. School Dist., 4
 
 NY2d 462, 464). Schools are not insurers of safety, however, for they cannot reasonably be expected to continuously supervise and control all movements and activities of students; therefore, schools are not to be held liable "for every thoughtless or careless act by which one pupil may injure another”
 
 (Lawes,
 
 16 NY2d, at 306,
 
 supra; Ohman v Board of Educ.,
 
 300 NY 306, 309). The nature of the duty owed was set forth in the seminal case of
 
 Hoose v Drumm
 
 (281 NY 54, 57-58): "[A] teacher owes it to his [or her] charges to exercise such care of them as a parent of ordinary prudence would observe in comparable circumstances.” The duty owed derives from the simple fact that a school, in assuming physical custody and control over its students, effectively takes the place of parents and guardians
 
 (see, Pratt v Robinson,
 
 39 NY2d 554, 560).
 

 In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated
 
 (see, e.g., Bertola v Board of Educ.,
 
 1 AD2d 973). Actual or constructive notice to the school of prior similar conduct is generally required because, obviously, school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students daily; an injury caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act
 
 (see,
 
 
 *50
 

 Ohman v Board of Educ.,
 
 300 NY 306, 310,
 
 supra; Wilber v City of Binghamton,
 
 271 App Div 402, 406,
 
 affd
 
 296 NY 950).
 

 Even if a breach of the duty of supervision is established, the inquiry is not ended; the question arises whether such negligence was the proximate cause of the injuries sustained. In some cases, the wrongful conduct of a fellow pupil may be considered extraordinary and intervening, thus breaking the causal nexus between a defendant’s negligent act or omission and a plaintiff’s injury. The test to be applied is whether under all the circumstances the chain of events that followed the negligent act or omission was a normal or foreseeable consequence of the situation created by the school’s negligence
 
 (see, e.g., Derdiarian v Felix Contr. Corp.,
 
 51 NY2d 308, 315;
 
 Parvi v City of Kingston,
 
 41 NY2d 553, 560;
 
 Dunn v State of New York,
 
 29 NY2d 313, 318).
 

 IV
 

 We agree with the Appellate Division that there was sufficient evidence as a matter of law to establish liability for negligent supervision in this case. Considering the evidence in the light most favorable to plaintiffs, the verdict should stand. Based on Vima’s testimony, which the jury was entitled to credit, it was not unreasonable for the jury to infer that defendant Board was on notice of an imminent foreseeable danger to Virna. The violent acts which caused plaintiffs’ injuries were sparked by a prior altercation and death threat of which defendant, through one of its teachers, was expressly made aware; yet no action was taken to prevent escalation of the incident by the teacher who met Virna and was in a position to assist her. Indeed, no security personnel were even present in the main security office or at key locations throughout the school when Virna sought to report the run-in and Webster’s threat.
 

 It was not irrational for the jury to conclude on such evidence that defendant Board was on notice of an imminent danger to Virna and did nothing reasonably calculated to protect her from that danger
 
 (see, Lawes,
 
 16 NY2d, at 305;
 
 see also, Cohen,
 
 45 NY2d, at 499,
 
 supra).
 
 Nor can it necessarily be said that this case involved the type of unforeseeable, spontaneous acts of violence for which school districts cannot be held liable
 
 (see, e.g., Lawes,
 
 16 NY2d, at 306,
 
 supra; Ohman,
 
 300 NY, at 309,
 
 supra).
 

 Supervision of students is obviously needed at dismissal
 
 *51
 
 time, when the largest number of students congregate and fights are most likely to occur. Indeed, this is reflected in the high school’s security plan, which called for two to five security officers to be positioned at the second-floor main entrance at dismissal. The uncontradicted testimony revealed that no security officers were present at the second-floor main entrance at the time plaintiffs were assaulted. We stress, however, that defendant’s failure to comply with the requirements of its security plan was not the only factor establishing negligence
 
 (see, Lawes,
 
 16 NY2d, at 306,
 
 supra; Maurer v Board of Educ.,
 
 294 NY 672;
 
 see also, Sherman v Robinson,
 
 80 NY2d 483, 489). The jury needed little more than its own common experience to conclude that security or supervisory personnel should have been present at dismissal.
 

 On the issue of proximate cause, we conclude that a rational jury could find that the complete absence of security or supervisory personnel at a time and place when vigilance was absolutely essential constituted the proximate cause of plaintiffs’ injuries. Proximate cause is a question of fact for the jury where varying inferences are possible
 
 (see, O’Neill v City of Port Jervis,
 
 253 NY 423, 433). Proper supervision depends largely on the circumstances surrounding the event
 
 (see, Oh-man,
 
 300 NY, at 309,
 
 supra).
 

 In sum, we hold only that it was not irrational for the jury to find as it did on the basis of the evidence presented in this case
 
 (see, Cohen,
 
 45 NY2d, at 499,
 
 supra).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed, with costs.
 

 *
 

 On the other hand, an Appellate Division reversal of a trial court’s determination that a jury verdict should be set aside as contrary to the
 
 weight
 
 of the evidence under CPLR 4404 (a) "is a factual determination and, as such, beyond [the Court’s] review power”
 
 (Sage v Fairchild-Swearingen Corp.,
 
 70 NY2d 579, 588).