SECOND DEPARTMENT, OCTOBER, 1996

(October 7, 1996)

■ BAII BANKING CORPORATION, Appellant, v NORTHVILLE INDUSTRIES CORP., Respondent. [648 NYS2d 325] —In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from (1) an order of the Supreme Court, Suffolk County (Oshrin, J.), dated May 25, 1994, which granted the defendant's motion for judgment upon a special jury verdict in its favor, and (2) a judgment of the same court, entered on August 4, 1994, dismissing the complaint.

Ordered that the appeal from the order is dismissed; and it is further,

Ordered that the judgment is affirmed; and it is further,

Ordered that the respondent is awarded one bill of costs.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action *(see, Matter of Aho,* 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment *(see,* CPLR 5501 [a] [1]).

The plaintiff brought this action to recover damages for breach of an alleged contract between the defendant and the plaintiff's predecessor-in-interest for the sale of gasoline. In response to specific interrogatories submitted to it, the jury found that the defendant had entered into a contract to purchase gasoline from the plaintiff's predecessor-in-interest. However, the jury also found that Joseph DiMauro had acted as a broker in the formation of the contract, that the defendant had relied upon DiMauro as the broker, and that DiMauro was also an undisclosed principal of the seller. By failing to disclose this interest, DiMauro and his company, Triad Petroleum, Inc. (hereinafter Triad), acting as a broker, had breached their duty of loyalty to the defendant, and the contract was rendered voidable *(see, Wendt v Fischer,* 243 NY 439).

The plaintiff seeks to vacate the jury verdict, insofar as it found that DiMauro and Triad had acted as a broker in the formation of this contract, owing a duty of loyalty to the defendant, and to dismiss the defendant's disloyalty defense, arguing that the verdict was not supported by legally sufficient evidence. However, based upon the evidence presented at trial, it cannot be said that there is no valid line of reasoning and permissible inferences which could possibly lead rational people to the conclusion reached by the jury. Thus, the jury's verdict is supported by legally sufficient evidence and will not be vacated *(see, Mirand v City of New York,* 84 NY2d 44, 48-49; *Cohen v Hallmark Cards,* 45 NY2d 493, 499). Moreover, it cannot be said that the jury could not have reached this verdict on any fair interpretation of the evidence. Therefore, the verdict will not be set aside as against the weight of the evidence *(see, Nicastro v Park,* 113 AD2d 129). Ritter, J. P., Thompson and Hart, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment, vacate the order, and remit the matter to the Supreme Court, Suffolk County, for a new trial, with the following memorandum: The plaintiff, Baii Banking Corporation (hereinafter Baii) commenced the instant action against Northville Industries, Inc. alleging that Northville had entered into a contract with Will Petroleum, Inc. (hereinafter Will), Baii's predecessor-in-interest, to purchase approximately $15,000,000 worth of 87-

octane gasoline. Will would purchase low-grade gasoline, i.e., 85 octane, and blend it to higher-grade gasoline, i.e., 87 octane, for resale. Baii financed many of Will's deals, on a "transactional, pre-sold basis", i.e., Baii would lend money to Will only after Will had a contract for the purchase of gasoline. Will was owned by Joseph DiMauro, who also owned Triad Petroleum, Inc. (hereinafter Triad), an intermediary, which allegedly found or brokered the deal.

In December of 1985 Will arranged to purchase approximately 21,000,000 gallons, of unleaded "blendstock" gasoline (85 octane) which it was to blend to bring it up to 87 octane. Since Baii would issue letters of credit to Will on a pre-sold basis, Baii required Will to identify the buyer and to receive a commitment to purchase the product prior to Baii issuing letters of credit.

Triad sent a telex to the attention of Northville's head trader, Saul Quinn, confirming the transaction of the sale of 520,000 barrels of gasoline from Will to Northville at a price of 70.50 cents per gallon for New York Harbor. Will sent a telex to Baii indicating the sale and requesting the letters of credit. Triad then sent a telex to Baii confirming the terms of the sale. Thereafter, Northville's assistant corporate credit manager, Hal Weiss, sent a telex to Baii confirming the purchase of 520,000 barrels of gasoline from Will. The telexes form the basis of Baii's claim that a contract existed between Will and Northville for the purchase of gasoline.

Between December 1985 and January 31, 1986, the market price for gasoline in New York Harbor dropped sharply to 58.50 cents per gallon. On January 29, 1986, for reasons unrelated to the Northville deal, Will filed for bankruptcy in Texas and as Will's largest creditor, Baii succeeded to Will's accounts receivable. In early February 1986 Baii requested that Northville perform the contract for the purchase of the 520,000 barrels of gasoline at 70.50 cents per gallon.

Northville denied the existence of the contract. Quinn testified that he never made such a deal. Quinn testified that he called DiMauro to tell him that he never made the deal with Will and was assured by DiMauro that he would "take care of it". DiMauro was not called to testify by either party.

In addition to denying the existence of the contract, as an alternative affirmative defense, Northville contended that even if the contract to purchase did exist, Northville had relied upon the services of an intermediary broker, Triad, which allegedly had breached its fiduciary duty to Northville by failing to disclose the fact that DiMauro, the principal broker with Triad, was the undisclosed principal of Will Petroleum.

In response to interrogatories, the jury found that Northville had, indeed, entered into a contract with Will to purchase the gasoline but that Triad had breached its fiduciary duty to Northville by failing to disclose the fact that DiMauro, the broker, was a principal of Will, rendering the contract voidable. The complaint was dismissed.

In my view, the plaintiff is entitled to a new trial based upon Northville's inconsistent and contradictory position on the facts.

Not only did Northville deny the existence of the contract, at the trial, it denied even discussing the matter. Under such circumstances, it was error to submit to the jury for consideration the disloyalty defense advanced by Northville. Having vigorously denied discussing the matter with Triad, Northville should be estopped from positing a defense that is totally inconsistent with such denial, to wit, reliance upon representations of a broker, Triad, who brokered the transaction. For this reason, Baii is entitled to a new trial.