■ ISRAEL O'NEAL et al., Appellants, v ARCHDIOCESES OF NEW YORK et al., Respondents, et al., Defendants. [730 NYS2d 524] —In an action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Queens County (LaTorella, J.), dated July 12, 2000, which granted the motion of the defendants Archdioceses of New York and Pius 12 Residential Services—Chester Campus Program for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is affirmed, with costs.

The infant plaintiff, Israel O'Neal, was a resident in a nonsecure facility for youths found in need of supervision by the Family Court which was operated by the Archdioceses of New York and Pius 12 Residential Services—Chester Campus Program (hereinafter collectively the respondents). One evening, while O'Neal was waiting with other residents in the cafeteria to obtain items from the bookstore, his roommate, the defendant William Cook, punched him in the face, breaking his jaw. At the time, there were three staff members in the cafeteria supervising 15 to 19 residents, and staff members immediately separated O'Neal and Cook.

The respondents were under a duty to provide adequate supervision to the youths placed in their care to protect them from foreseeable injuries proximately caused by the acts of fellow residents of the facility (see generally, Mirand v City of New York, 84 NY2d 44; Convey v City of Rye School Dist., 271 AD2d 154, 159-160). The respondents, however, are not insurers of the safety of the residents and cannot be expected to continuously control all their actions. Therefore, to prevail, the plaintiffs must establish that the respondents had sufficiently specific knowledge or notice of the dangerous conduct which caused the injury (see, Mirand v City of New York, supra).

The respondents established prima facie that Cook's action was impulsive and could not reasonably have been anticipated, particularly since O'Neal acknowledged in his deposition testimony that he had not had any previous confrontations with Cook. Moreover, the incident occurred in so short a time span that any lack of supervision was not the proximate cause of the injury (see, Convey v City of Rye School Dist., supra, at 160). The plaintiffs failed to present evidence sufficient to raise a triable issue of fact with respect to the respondents' liability.

Thus, the Supreme Court correctly granted the respondents' motion for summary judgment. O'Brien, J. P., Krausman and Schmidt, JJ., concur.

Crane, J., dissents and votes to reverse the order appealed from, on the law, deny the motion, and reinstate the complaint insofar as asserted against the defendants Archdioceses of New York and Pius 12 Residential Services—Chester Campus Program with the following memorandum: A party moving for summary judgment must establish as a matter of law that there are no issues of fact (see, Zuckerman v City of New York, 49 NY2d 557, 562) before the burden shifts to the opposing party (see, Winegrad v New York Univ. Med. Ctr., 64 NY2d 851). Because the moving defendants did not sustain their burden on the motion to dismiss the complaint, I dissent.

I agree with the majority that this case should be measured by the standards pertaining to the duty of educational institutions to provide adequate supervision. We part company on the question of whether the record made by the moving defendants was sufficient to negate actual or constructive notice (see, Mirand v City of New York, 84 NY2d 44, 49 ["In determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated"]).

The Supreme Court, it seems, was led into error in one small respect that the majority appears to ratify. The Supreme Court articulated that there had been no reports "of any prior specific incidents between the two students." Prior conduct of the assailing student, however, need not have been directed against the plaintiff. Predicate acts of violence against any students may suffice (see, Moores v City of Newburgh School Dist., 237 AD2d 265; cf., Convey v City of Rye School Dist., 271 AD2d 154, 159-160).

The record is replete with information about William Cook, the assailant who broke the infant plaintiff's jaw in the instant case. From the examinations before trial presented by the moving defendants there emerge ample facts to destroy their prima facie case on the issue of notice. The administrative structure of the Pius 12 Residential Services—Chester Compus Program (hereinafter Pius 12) is designed to maintain staff awareness through social workers and other professionals, including "treatment team meetings," of the background and problems of the residents and whether they might endanger the health or

welfare of other residents. This awareness includes whether a resident is constantly getting into fights.

The information about the behavior of Cook is well documented and includes allegations of his incorrigible behavior and acting out of control. The psychologist reporting to the Family Court on young Mr. Cook stated that his behavioral problems included "fighting and oppositional behavior with suspensions in relation" thereto. This was in the files of Pius 12. Cook had been in bad incidents since he was in the Pius 12 facility. For example, some months before he broke the jaw of the infant plaintiff, Cook was embroiled in a verbal altercation with another resident when he started a fight with him on the side of the cottage where Cook did not belong. When separated, Cook was in a "violent rage."

Pius 12 uses all this information and disseminates it to supervisory staff including John Perry, a supervisor who was present in the room when Cook punched Israel O'Neal on April 22, 1997. This information is used to establish a profile for a new resident and in determining the level to which a resident is promoted. Evaluations for Cook included "doesn't want to be managed by anyone; doesn't listen" and "major problems, tantrums; easily angered, is often irritated, provoked; has tantrums."

There was sufficient evidence presented by the moving defendants to raise a question as to whether they had knowledge of Cook's violent tendencies, when Cook punched Israel O'Neal in the jaw, to put them on actual or constructive notice. This knowledge was sufficiently specific notice of the dangerous conduct that caused the infant plaintiff's injury to withstand a motion for summary judgment (*see, Mirand v City of New York, supra*). The Supreme Court and the majority, however, underscore the impulsive and swift nature of the attack. Of course, lack of adequate supervision will not be the proximate cause of a student's injury in impulsive and unanticipated circumstances (*see, Mirand v City of New York, supra* [plaintiff stabbed by fellow student who had had run-in with plaintiff's sister]; *Lawes v Board of Educ.*, 16 NY2d 302 [snowball fight]; *Hernandez v Christopher Robin Academy*, 276 AD2d 592 [plaintiff injured when separated by a third student in a fight with a classmate]; *Convey v City of Rye School Dist., supra* [pine cone throwing]; *Kennedy v Seaford Union Free School Dist.*, 250 AD2d 574 [fight between friends]; *Danna v Sewanhaka Cent. High School Dist.*, 242 AD2d 361 [plaintiff injured when she started fight with fellow student for kicking her school bag while teacher was in hallway unaware of altercation]).

On the record created by the moving parties in the instant case, the issue of fact is patent as to whether the altercation was impulsive and immediate so as to invoke the above authorities. Cook's assault on O'Neal took place in a room measuring 35 feet by 60 feet. Mr. Perry, one of two supervisors on duty at the time, was 15 feet away from Cook while he was seated next to O'Neal in the cafeteria. The boys were there to go one by one to the book store. The boys argued about hair gel that O'Neal lent to Cook. Cook started cursing and, after five minutes, got up to go to the book store located about 10 feet away. Within approximately 30 seconds, Cook returned to where O'Neal was seated instead of the back of the line where he was supposed to go, and the argument resumed for another two to three minutes. This is when Cook threw his punch.

Finally, whether or not admissible at the trial (*cf., Resnikoff v Yagoda,* 75 AD2d 579), O'Neal's mother spoke to Cook after the assault. When she asked him why he had hit her son, Cook said "Ask the guard; the guard let me do it. The guard sat there and let me do it." The guard, presumably Mr. Perry, acknowledged "You must intervene if you hear two boys having a heated exchange."

The motion for summary judgment should have been denied.