■ MICHELE M. et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Defendant, and THE JEWISH HOME AND HOSPITAL FOR THE AGED, Appellant. [771 NYS2d 89]—

Order, Supreme Court, Bronx County (Jerry Crispino, J.),

entered December 11, 2002, which denied the motion of defendant The Jewish Home and Hospital for the Aged (JHHA) for summary judgment dismissing the complaint against it, reversed, on the law, without costs, the motion granted and the complaint as against it dismissed. The Clerk is directed to enter judgment accordingly.

In September 1996, plaintiff Michele M. was a 19-year-old mentally handicapped student at McSweeney Occupational Training School, operated by the New York City Board of Education. As part of her educational program, Michele, who functioned at the level of a seven year old, participated in one of the school's off-site training programs, conducted in a facility operated by defendant, The Jewish Home and Hospital for the Aged. It is alleged that another student in the program named Max repeatedly raped Michele in JHHA and threatened to kill her if she told anyone. Michele therefore told no one about the rapes, which were only disclosed after her mother, plaintiff Martha M., noticed that Michele had missed her period. When testing indicated that Michele was pregnant, she told her mother what Max had done to her. Michele subsequently had an abortion. Plaintiffs commenced this action against JHHA and the New York City Board of Education in August 1998.

Following discovery, defendant JHHA moved for summary judgment dismissing the complaint to the extent it was directed against it. Supreme Court denied the motion and this appeal followed.

JHHA asserts that it is not a school, did not operate or administer the training program, and did not have any responsibility to supervise the participating students. JHHA also argues that it had no notice or knowledge of Max's alleged assaults upon Michele or of his dangerous propensities and, thus, cannot be held liable for her injuries. Plaintiffs counter that JHHA had a duty coextensive with the duty of the McSweeney school to supervise the students in the training program and that JHHA is, therefore, liable for Michele's injuries, regardless of whether it had notice of the potential danger Max posed to Michele.

To defeat JHHA's motion for summary judgment, plaintiffs must produce evidence in admissible form to demonstrate the existence of a disputed issue of material fact sufficient to require a trial (CPLR 3212 [b]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). In this case, we need not determine if JHHA had the same or similar duty to supervise students in the McSweeney occupational training program since, even if JHHA were under such a duty, it could not be held liable for Michele's

injuries unless it had notice or knowledge of Max's conduct toward Michele or of any predilection Max might have had to engage in such conduct (*Mirand v City of New York*, 84 NY2d 44, 49 [1994] [to impose liability on a school for injuries inflicted by one student on another, "it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated"]; *see also Shante D. v City of New York*, 190 AD2d 356 [1993], *affd* 83 NY2d 948 [1994] [school will be liable for any *foreseeable* injury proximately related to a failure to supervise]). Plaintiffs acknowledge that there is no evidence establishing that JHHA had the requisite notice or knowledge of Max's dangerous conduct toward Michele or his propensity to engage in such conduct. Absent such evidence, there is no basis for holding JHHA liable.

We note that in the case of *Garcia v City of New York* (222 AD2d 192 [1996], *lv denied* 89 NY2d 808 [1997]), the student was only five years old, was on school premises and had been sent unaccompanied, by his teacher, to the bathroom, where he was attacked, "despite two separate school memoranda, circulated amongst the school's staff, which explicitly provided security procedures to the contrary" (*id.* at 194). Thus, the circumstances provided a basis for finding foreseeability (*see Mirand* at 50). No such circumstances are present in the instant matter, and imposition of liability would improperly subject JHHA to liability as an insurer of the safety of the participants in defendant McSweeney's occupational training program (*see Mirand* at 49). Concur—Tom, J.P., Rosenberger and Marlow, JJ.

Saxe, J., dissents in a memorandum as follows: It has been held that those in charge of supervising children of tender years have affirmative obligations to take steps to protect them from potential dangers that can be reasonably foreseen (*see Garcia v City of New York*, 222 AD2d 192, 196-197 [1996], *lv denied* 89 NY2d 808 [1997]). It is not necessary that the entity acting in loco parentis have actual or constructive notice of the particular danger actually encountered (*id.*). Applying that standard to those in charge of supervising adolescents with substantial mental disabilities, questions of fact preclude summary judgment in this action.

In December 1996, plaintiff Michele M. was a 19-year-old mentally retarded student with an assessed functional age of seven years old. She attended the McSweeney Occupational Training School, which is operated by defendant Board of Education of the City of New York. As part of her schooling,

Michele and approximately 11 other students were assigned to work at The Jewish Home and Hospital for the Aged (the Jewish Home), where they attended classes with teachers from their school and then performed assigned tasks such as transporting wheelchair-bound patients to various places in the Jewish Home. The students' assigned tasks were monitored by employees of the Jewish Home.

Plaintiffs assert that one day in December 1996, Michele was in the girls' bathroom at the Jewish Home, brushing her hair, when her fellow student Max Medina entered the bathroom, locked the door behind him and raped her. He subsequently raped her a number of other times, including on the roof of the Jewish Home. In January 1997, realizing that Michele had not gotten her menstrual period and that something was upsetting her, Michele's mother took her to the emergency room at Bronx Lebanon Hospital, where it was determined that Michele was pregnant, and that she had been raped. Michele underwent an abortion to terminate the pregnancy the next day. Thereafter, they went to the police to initiate a criminal complaint and obtain an order of protection. Max was charged with assault, and ultimately he pleaded guilty to the charge.

This lawsuit seeks damages from both the Board of Education and The Jewish Home and Hospital for the Aged for Michele's emotional injuries as well as her medical expenses, based upon a theory of negligent supervision.

In seeking summary judgment dismissing the action against it, the Jewish Home maintains that it was not responsible for supervising the students. Its position is that only the Board of Education was responsible for supervising the students, and only the Board had knowledge of the students' capabilities and needs. It also contends that there was no evidence that it had notice that the plaintiff's assailant was dangerous or needed monitoring, since it had received no prior complaints about him from Michele or any others.

In my view, the motion court properly rejected the application.

It is well settled that "[s]chools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (*Mirand v City of New York*, 84 NY2d 44, 49 [1994]). Schools, and their functional equivalents, owe students the care that "a parent of ordinary prudence would observe in comparable circumstances" (*Garcia v City of New York*, 222 AD2d 192, 194 [1996], *lv denied* 89 NY2d 808 [1997], quoting *Hoose v Drumm*, 281 NY 54, 58 [1939]; *and see Shante*

*D. v City of New York*, 190 AD2d 356 [1993], *affd* 83 NY2d 948 [1994]). "Where injuries are caused by the intentional acts of fellow students, imposition of liability upon the school under a theory of negligent supervision is justified when a plaintiff can show, *usually* by virtue of the school's prior knowledge or notice of the dangerous conduct which caused the injury, that the acts of the fellow student could reasonably have been anticipated" (*Schrader v Board of Educ. of Taconic Hills Cent. School Dist.*, 249 AD2d 741, 742 [1998] [emphasis added and citation omitted], *lv denied* 92 NY2d 806 [1998]).

The majority, in granting the motion of the Jewish Home, reason that it may not be held liable unless it had notice or knowledge of Max's conduct toward Michele or of any predilection Max might have had to engage in such conduct (citing *Mirand v City of New York*, 84 NY2d 44, 49 [1994]). However, as this Court recognized in *Garcia v City of New York* (222 AD2d 192 [1996]), prior notice or knowledge of the particular proclivities of the perpetrator is not necessary when the victim is a young child and it was reasonably foreseeable that an incident of the type in question would occur, absent some sort of safeguarding measures.

In *Garcia*, a five-year-old kindergarten student had been molested by an older student when sent to the school bathroom alone; the jury found that it was reasonably foreseeable that a young child sent unaccompanied to that school bathroom would be subject to harm by the acts of third persons (*id.* at 193). We upheld a jury verdict in favor of the plaintiffs, explaining that "[t]he potential danger to the child under the circumstances of this case can be reasonably foreseen and could have been prevented by adequate supervision," noting that five-year-old children pose easy, defenseless targets (*id.* at 196).

The general requirement of notice of prior similar conduct is applied with older children, as in *Mirand*, "because there is no way a school can foresee and take precautions against a sudden, spontaneous act by a fellow student" (222 AD2d at 195). But, "while it would be reasonable to allow high school students to go to a public bathroom unaccompanied, the same practice surely does not apply to a five-year-old child . . . [Although] even the most prudent parent will not guard his or her teen at every moment in the absence of some foreseeable danger of which he or she has notice; . . . a five-year-old child in a public bathroom should be supervised or, at the very least, be accompanied by another child" (222 AD2d at 196).

Therefore, there is an important distinction to be made between the duty to supervise older children, such as those in

high school, and that relating to the protection of young children. While those charged with supervising adolescents will not be held liable for a spontaneous act by a fellow student unless they had reason to anticipate such an act, entities charged with the supervision of young children may be held liable even without notice of the particular assailant's proclivities, when they are or should be aware of danger in the particular circumstances based upon the children's inability to fend for themselves.

Of course, the case before us does not involve five year olds. However, it is undisputed that Michele functions at the level of a seven year old; in fact, her mother stated that she was unable to fully comprehend the nature of sexual relations. It is reasonable to suggest that entities charged with the supervision of adolescents with the functional levels of young children must employ a degree of care similar to that applied to supervising young children. Entities with supervisory obligations over mentally disabled individuals must be required to exercise a level of supervision that takes into account the limits in the understanding, judgment and abilities of such individuals.

As to the suggestion that, in contrast to the elementary school bathroom in *Garcia*, the Jewish Home setting posed no foreseeable dangers to students such as Michele, a question of fact is presented as to whether the information defendants had, or should have had, regarding these students made it foreseeable that an unsupervised, aggressive, mentally disabled adolescent boy might sexually assault a mentally retarded adolescent girl in the absence of any supervisory presence.

Therefore, the lack of notice that this particular attacker had previously committed such acts is irrelevant; *under the circumstances, liability may lie if it is found that the attack on Michele was a reasonably foreseeable consequence of the failure to supervise*. Because that issue presents a question of fact, summary judgment was properly denied.

Nor should the Jewish Home succeed in obtaining dismissal of the claim against it with the assertion that only the Board of Education had supervisory responsibilities toward Michele and the other students. This placement was part of Michele's school program; insofar as the record reflects, it appears that the Jewish Home acted in conjunction with the McSweeney Occupational Training School and monitored the activities of the students. There was deposition testimony from the school's principal and Michele's teacher, who both said that the Jewish Home was responsible for supervising the students when they were working at the Jewish Home; indeed, even the director of

the Jewish Home acknowledged that the Jewish Home monitored the students during their assigned tasks. The document upon which the Jewish Home relies, a Board of Education resolution authorizing the Chancellor to enter into agreements for placements for special education students, does not preclude the possibility that the agency in which students are placed would also have supervisory responsibilities.

Furthermore, although the submitted evidence reflects that it was Board employees rather than representatives of the Jewish Home who asserted that Max was "streetwise" and "a dominating personality" who encroached upon the space of other students, the Jewish Home arguably was, or should have been, in possession of the basic information with respect to these students. Such basic information could include the observation of aggressive tendencies in any of the students, and the extent of the students' disabilities and any consequent need to be protected from the types of dangers those disabilities might make them unequipped to handle. The assertion by the Jewish Home that the Board did not give it any information on the students placed there, while it might support a factual finding that the Board took sole responsibility for supervising the students, does not necessarily relieve the Jewish Home of the obligation to obtain such information on students placed there.

Consequently, triable issues are presented with respect to defendants' responsibility for supervising the students and as to whether the incidents were foreseeable.