█ CHARLES HOFMANN, Individually and as Parent and Guardian of NICOLE HOFMANN, an Infant, Respondent, v COXSACKIE-ATHENS CENTRAL SCHOOL DISTRICT, Appellant, et al., Defendants. [894 NYS2d 559]—

Kavanagh, J. Appeal from an order of the Supreme Court (Teresi, J.), entered June 23, 2009 in Greene County, which denied a motion by defendant Coxsackie-Athens Central School District for summary judgment dismissing the complaint against it.

Plaintiff's 13-year-old daughter was attending defendant Coxsackie-Athens Central School District's middle school when she was bumped and punched by two other students (hereinafter referred to as the male and female assailants) while in a hallway waiting to attend class. Later that same day, she was again confronted by the same two students in a school hallway, when the male assailant punched her in the face, while the female assailant forced her head against a cement wall causing her to fall to the ground. After both assailants walked away, plaintiff's daughter got to her feet and went to her next class; however, a half hour later, as her face began to swell, she went to the school nurse, reported what had happened and received medical treatment.* It was subsequently determined that as a result of the assault, plaintiff's daughter sustained numerous contusions and bruises about her head and face, as well as a dislocated jaw that required surgery. After plaintiff commenced this action against the School District and the male and female assailants, Supreme Court denied the School District's motion for summary judgment dismissing the complaint. This appeal ensued.

---

* An investigation was subsequently conducted into the incident and, as a result, both assailants were suspended from school and later adjudicated juvenile delinquents in Family Court.

While a school district is not obligated to guarantee the safety of its students, it is required "to adequately supervise the students in [its] charge and . . . will be held liable for foreseeable injuries" that occur as a result of the failure to provide that level of supervision (*Mirand v City of New York*, 84 NY2d 44, 49 [1994]; *see Spaulding v Chenango Valley Cent. School Dist.*, 68 AD3d 1227, 1228 [2009]). In that regard, a school district is held to "the same degree of care as would a reasonably prudent parent placed in comparable circumstances" (*Bellinger v Ballston Spa Cent. School Dist.*, 57 AD3d 1296, 1297 [2008], *lv denied* 12 NY3d 704 [2009] [citation omitted]) and will be held liable for an assault that has been perpetrated on school grounds by a student that " 'could have been reasonably anticipated due to the school's notice or prior specific knowledge of the . . . student's propensity to engage in such conduct' " (*Flanagan v Canton Cent. School Dist.*, 58 AD3d 1047, 1048 [2009], quoting *LaPage v Evans*, 37 AD3d 1019, 1020 [2007]).

The School District does not take issue with plaintiff's claim that his daughter was injured as the result of being assaulted by other students on school grounds, but argues that it is not liable because it had no notice that this particular assault would take place or that either assailant had a history of engaging in the type of conduct that would have made it foreseeable that such an attack would occur. In that regard, plaintiff points to an incident that occurred on the middle school grounds on the Friday before the attack, when his daughter was physically threatened by the two assailants at a school dance sponsored by the local Parent Teacher Organization (hereinafter PTO). At the dance, the female assailant attempted to assault plaintiff's daughter and, while being restrained, told plaintiff's daughter that "[w]hen you least expect it, I'm going to come right back after you." Later that same evening, the male assailant told plaintiff's daughter that he planned to bring a baseball bat to school the following Monday and strike her with it. Plaintiff's daughter informed her aunt—who was a chaperone at the dance—about the incident and the aunt, without notifying any school representative, confronted the two assailants directly about it. The School District argues that the aunt was not its agent or representative, and the exchange she had with plaintiff's daughter should not serve to put it on notice that plaintiff's daughter would be attacked while attending school. However, while the School District argues that the PTO is not part of the School District, and its chaperones that attended the dance were not its agents, the record is unclear as to what involvement the School District had in insuring that the dance

was chaperoned and whether it played any role in how these chaperones were selected and trained. We also note that the PTO was held to a different standard by the School District from other organizations that sought to use school property for functions and events. For example, the PTO did not—as would an organization not affiliated with the School District—have to obtain insurance coverage for this dance even though it was held on school property. For these reasons, we agree with Supreme Court that the School District has not established as a matter of law that it was not on notice as to the threat posed to plaintiff's daughter by these two assailants in the days immediately prior to the actual attack.

Moreover, even if the School District was not on notice about these threats, it did know, prior to the actual assault, that the male assailant had compiled an extensive disciplinary record while attending school and that, in the 14-month period leading up to this incident, he had been cited no less than 30 times for disciplinary infractions involving misconduct committed while on school grounds. These infractions included insubordination to school staff, disruptive conduct in the classroom, inappropriate and forcible touching of female students, extensive use of profanity and assaultive conduct directed towards other students, some of which resulted in physical injury. In fact, prior to his assault of plaintiff's daughter, the male assailant had been suspended from school on numerous occasions because of his conduct and, in that regard, had been asked—but refused to sign—a contract with school authorities agreeing not to engage in disruptive conduct while at school. Based on this history, one could conclude that the School District should have reasonably anticipated that the male assailant, because of his propensity to engage in such inappropriate conduct, posed a danger to others attending his school and could well assault another student (*compare MacCormack v Hudson City School Dist. Bd. of Educ.*, 51 AD3d 1121, 1122-1123 [2008]; *see Smith v Poughkeepsie City School Dist.*, 41 AD3d 579, 580 [2007]; *LaPage v Evans*, 37 AD3d at 1020; *McLeod v City of New York*, 32 AD3d 907, 908-909 [2006]; *Van Leuvan v Rondout Val. Cent. School Dist.*, 20 AD3d 645, 646 [2005]).

The School District also argues that this attack happened so suddenly and was so spontaneous that it could not have prevented it. However, the male assailant's persistent refusal to conform his conduct to school rules and regulations during a period of time immediately prior to the attack raises a question as to whether the School District had taken the necessary preventive measures to safeguard the students in its charge (*see Mac-*

*Cormack v Hudson City School Dist. Bd. of Educ.*, 51 AD3d at 1123; *Wilson v Vestal Cent. School Dist.*, 34 AD3d 999, 1000 [2006]; *Wood v Watervliet City School Dist.*, 30 AD3d 663, 664 [2006]).

Peters, J.P., Rose, Lahtinen and Garry, JJ., concur. Ordered that the order is affirmed, with costs.