Scavelli v Town of Carmel (2015 NY Slip Op 06666)





Scavelli v Town of Carmel


2015 NY Slip Op 06666


Decided on August 26, 2015


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2015
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
THOMAS A. DICKERSON
COLLEEN D. DUFFY
BETSY BARROS, JJ.


2013-04665
 (Index No. 316/11)

[*1]Jonathan Scavelli, etc., et al., respondents, 
v
Town of Carmel, defendant, Mahopac Central School District, et al., appellants.


Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, Uniondale, N.Y. (Kathleen D. Foley of counsel), for appellant Mahopac Central School District.
Thomas Moore (Andrea G. Sawyers, Melville, N.Y. [David R. Holland and Jennifer M. Belk], of counsel), for appellant Jordan Maher.
Lisa Michael & Associates, P.C., New York, N.Y., for respondents.



DECISION & ORDER
In an action to recover damages for personal injuries, etc., the defendant Jordan Maher appeals, and the defendant Mahopac Central School District separately appeals, as limited by their respective briefs, from so much of an order of the Supreme Court, Putnam County (Lubell, J.), dated March 25, 2013, as denied their separate motions for summary judgment dismissing the complaint insofar as asserted against each of them.
ORDERED that the order is reversed, on the law, with one bill of costs, and the appellants' separate motions for summary judgment dismissing the complaint insofar as asserted against each of them are granted.
The plaintiff Jonathan Scavelli (hereinafter the infant plaintiff) allegedly was injured during a "speedball" game conducted in an eighth-grade physical education class at Mahopac Middle School. According to the infant plaintiff, he was injured when a fellow student, the defendant Jordan Maher, tripped him while they were both going for the same ball. The plaintiffs commenced this action against, among others, Maher and the defendant Mahopac Central School District (hereinafter the School District). With respect to the School District, the plaintiffs asserted causes of action alleging negligent supervision and instruction. With respect to Maher, the plaintiffs asserted causes of action alleging negligence and recklessness. Maher and the School District (hereinafter together the defendants) separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. The Supreme Court denied both motions. The defendants appeal, and we reverse.
The Supreme Court should have granted the defendants' separate motions for summary judgment dismissing the complaint insofar as asserted against each of them. During his General Municipal Law § 50-h hearing, the infant plaintiff testified that his gym teacher had [*2]instructed the students, prior to the game, that speedball was a "no contact" sport where players on two teams pass the ball to their teammates and seek to score goals from behind a cone line. Play begins with a "jump ball," and the accident occurred as the infant plaintiff and Maher were chasing the ball immediately after the jump. The infant plaintiff testified, "I really don't know if [Maher] tripped me on purpose . . . I felt like he stuck his foot out, but I cannot be sure." The infant plaintiff described the gym teacher's role during the game as that of a referee. At a deposition conducted almost two years later, the infant plaintiff contradicted his earlier General Municipal Law § 50-h hearing testimony in three respects: he testified that the gym teacher had not instructed the students to avoid bodily contact, that the gym teacher did not act as a referee and did not do "much of anything" except talk to other students who were not playing, and that Maher had intentionally tripped him while running for the ball because Maher was an aggressive player who had shoved a different student during gym class on an earlier date. Each of these inconsistencies is significant, and not "minor" as described by our dissenting colleague, as each one goes to the heart of the plaintiffs' allegations regarding the nature of the accident and the instruction and supervision provided by the School District. In any event, according to the infant plaintiff, the gym teacher came to his aid within approximately 10 seconds of the accident. Maher testified at his deposition that he was not aware that any accident had even happened until after the game was over. The gym teacher testified at his deposition that he observed an "accidental trip" as two students were running for the same ball.
Maher demonstrated his prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against him. In support of his motion, Maher submitted the transcripts of the infant plaintiff's General Municipal Law § 50-h hearing testimony, the infant plaintiff's deposition testimony, and his own deposition testimony, which established, prima facie, that Maher was not negligent. The mere happening of an accident, in and of itself, does not establish liability of a defendant (see Foley v Golub Corp., 252 AD2d 905, 908). Both the infant plaintiff and Maher testified that the accident occurred when they both ran toward the ball immediately after the jump ball. The infant plaintiff's deposition testimony that Maher intentionally tripped him is conclusory and speculative in light of the infant plaintiff's testimony that he was concentrating on the ball at the time of the accident (see Fraioli v City of New York, 6 AD3d 657, 658). In any event, such evidence would not present a triable issues of fact as to Maher's alleged negligence, as an intentional state of mind is not an element of the cause of action alleging negligence against Maher (see McGovern v Weis, 265 App Div 367), and the plaintiffs have not alleged a cause of action for an intentional tort. We decline to find that Maher's mere conduct of running for a ball during a sporting event raises questions, in and of itself, of negligence. In opposition to Maher's prima facie showing, the plaintiffs failed to raise a triable issue of fact. The plaintiffs' submissions failed to raise a triable issue of fact as to how or in what manner Maher's running was negligent or reckless, as opposed to being an unfortunate non-negligent accident between two competitors in close proximity to each other.
The School District's submissions, including an affidavit of a physical education expert, established its prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against it (see David v County of Suffolk, 1 NY3d 525, 526; Peuplie v Longwood Cent. School Dist., 49 AD3d 837, 839). The evidence submitted by the School District demonstrates that the incident occurred so quickly that it could not have been prevented by even the most intense supervision (see Thomas v City of New York, 124 AD3d 872; Odekirk v Bellmore-Merrick Cent. School Dist., 70 AD3d 910; Mayer v Mahopac Cent. School Dist., 29 AD3d 653; Siegall v Herricks Union Free School Dist., 7 AD3d 607; Opalek v West Islip Union Free School Dist., 1 AD3d 491). In opposition, the plaintiffs failed to raise a triable issue of fact (see O'Brien v Sayville Union Free School Dist., 87 AD3d 569). While the plaintiffs emphasize that there is evidence in the record indicating that Maher had shoved another student in a gym class on an earlier date, this evidence was insufficiently specific to place the School District on notice of the conduct that led to the infant plaintiff's injuries (see Mirand v City of New York, 84 NY2d 44, 49; Thomas v City of New York, 124 AD3d at 873-874). Finally, while the compulsory nature of the gym class activities precludes an assumption of risk defense, it is not an impediment to summary judgment, as it does not deprive the School District of its defense that the incident was sudden and unexpected (see Knightner v William Floyd Union Free School Dist., 51 AD3d 876; Mayer v Mahopac Cent. [*3]School Dist., 29 AD3d 653, 655; Sangineto v Mamaroneck Union Free School Dist., 282 AD2d 596).
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the Supreme Court should have granted the defendants' separate motions for summary judgment dismissing the complaint insofar as asserted against each of them.
DILLON, J.P., DICKERSON and BARROS, JJ., concur.
DUFFY, J., dissents and votes to affirm the order of the Supreme Court, with the following memorandum:
I disagree with the majority and would affirm the Supreme Court's order insofar as it relates to the defendant Mahopac Central School District and, insofar as it relates to the defendant Jordan Maher, I would affirm on different grounds.
According to the infant plaintiff, he was injured when another student tripped him while they were participating in a new game, referred to as "speedball," during gym class. The transcripts of the deposition testimony of Maher, the infant plaintiff, and the gym teacher, and of the plaintiff's General Municipal Law § 50-h hearing, which were submitted in support of the motions of Maher and the School District (hereinafter together the defendants), failed to eliminate triable issues of fact as to whether the gym teacher provided sufficient instruction to the students prior to the game as to how to safely play this new game, as to whether there was adequate supervision during the game, and as to whether the conduct of Maher was negligent or reckless. Thus, I disagree with the majority's determination that Maher and the School District each established their prima facie entitlement to judgment as a matter of law.
A defendant moving for summary judgment has the initial burden of proffering evidence in admissible form demonstrating, prima facie, that the plaintiff's cause of action has no merit (see GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965, 967; Merkley v Palmyra-Macedon Cent. School Dist., 130 AD2d 937, 937). Negligence actions do not always lend themselves to summary judgment, as there can be a question as to the reasonableness of a party's conduct under the circumstances of the case (see Ugarriza v Schmieder, 46 NY2d 471, 475; Greenberg v Green, 197 AD2d 502, 502). Moreover, on a motion for summary judgment, the evidence must be viewed "in the light most favorable to the nonmoving parties" (Merkley v Palmyra-Macedon Cent. School Dist., 130 AD2d at 938).
According to the majority, the infant plaintiff, who testified twice, once in 2010 at a General Municipal Law § 50-h hearing and again two years later at a deposition in 2012, contradicted his own testimony in three respects. I disagree. Although there were minor inconsistencies in the infant plaintiff's testimony which could be expected due to the passage of time, the infant plaintiff did not contradict himself on material issues. With respect to the instructions that the gym teacher provided to the students before the game, the infant plaintiff consistently testified that the instructions about this new game were brief. In both 2010 and 2012, the infant plaintiff also expressed his understanding that the players were instructed that speedball was a no-contact game and that taking the ball from another student "was not allowed." In 2010, the infant plaintiff testified that the gym teacher had told him that "it's a no-contact game" and, in 2010 and 2012, that the gym teacher merely told them basic rules, such as that they were required to pass to all five teammates before they could score a goal and to stay out of the cone line. In 2012, although the infant plaintiff answered, "[n]o" when he was asked if the gym teacher had "sa[id] anything about bodily contact," he also testified shortly thereafter that the gym teacher disciplined Maher in a game a week earlier for shoving another student while that student was going for the ball, that the gym teacher said "he didn't want to see that," and that he made Maher sit out the rest of that earlier game.
The infant plaintiff's testimony in 2010 and in 2012 regarding the lack of supervision by the gym teacher also was not inconsistent. In 2010, the infant plaintiff testified that, in the earlier game in which Maher had played, the gym teacher had acted as a referee; he never testified that the gym teacher acted as a referee during the game in which he was injured. Instead, he testified that, when Maher tripped him and he fell to the ground, the gym teacher was not near him, identifying the location of the gym teacher on a photograph that was shown to him as "toward the door" to the outside, which was in the gym at a distance from the infant plaintiff. The infant plaintiff also testified that the gym teacher was not the first person to assist him, and that the gym teacher came over only after the infant plaintiff told his teammate that he "c[ould ]not get up." His 2012 testimony about the gym teacher's lack of supervision during the game was similar. The infant plaintiff testified that the gym teacher "wasn't doing much of anything," that "[h]e was just kind of talking to the kids that were not playing," and that the infant plaintiff saw the gym teacher by the bleachers talking to other students when the infant plaintiff was "on the ground" and that the gym teacher was "more than half [the width of the gymnasium]" away from where the infant plaintiff landed on the ground. He testified that the gym teacher was not the first one to come over to him, and that one of his teammates arrived first.
Likewise, the infant plaintiff's 2010 testimony and 2012 testimony regarding Maher's actions was not inconsistent. In 2010, the infant plaintiff testified that he did not know "if [Maher] tripped [him] on purpose," that he was closer to the ball, but he and Maher were "neck and neck," and that it "felt like [Maher] stuck his foot out, but [he couldn't] be sure." At that time he also testified that he had observed Maher in the earlier game "t[ake] the ball from someone and knock [ ] him to the ground." In 2012, the infant plaintiff testified that Maher was to his right and that he felt Maher "trying to trip [him]." He testified "[i]t was a trip, . . . it was just—his foot like blocking my foot so I had to trip." When asked why he believed Maher was trying to trip him, the infant plaintiff replied, "[b]ecause he had done it before. Not [to] me, but he was an aggressive player . . . he pushed them."
Thus, to the extent that the majority contends that summary judgment is warranted on the ground that the infant plaintiff's 2012 deposition testimony was inconsistent with his 2010 testimony, I disagree. In any event, any credibility issue that is raised should be decided by a jury, not a court on a motion for summary judgment (see DiGiantomasso v City of New York, 55 AD3d 502, 503; Santiago v Frito-Lay, Inc., 235 AD2d 528, 529).
I also disagree with the majority's conclusion that the infant plaintiff's testimony about Maher's earlier aggressive behavior against another student while playing in the earlier game of speedball was not specific enough to place the School District on notice of the conduct that led to the infant plaintiff's injury. Here, the infant plaintiff testified at his deposition that the very student who had caused his injury had been disciplined by this same gym teacher only days earlier for shoving another student who was going for the ball after tip-off in a game of speedball and, just as with the infant plaintiff's injury, Maher caused the other student to fall down.
This deposition testimony distinguishes this case from those unforeseeable spontaneous act cases where there is no evidence of prior similar behavior (see Thomas v City of New York, 124 AD3d 872; Mayer v Mahopac Cent. School Dist., 29 AD3d 653, 654). Unlike the facts in the case that is cited by the majority, Mirand v City of New York (84 NY2d 44, 49), here, the prior aggressive act exhibited by Maher was sufficiently similar to the act at issue such that it could have been prevented with sufficient instruction and supervision.
In short, the School District failed to establish, prima facie, its entitlement to judgment as a matter of law. A school district owes a duty to its students to take such care of them as a reasonably prudent parent would exercise under similar circumstances (see Mirand v City of New York, 84 NY2d at 49; Merson v Syosset Central School District 286 AD2d 668, 669). In determining whether a school district is negligent in the supervision of a student who is injured by the conduct of another student, it must be established that the harmful act could reasonably have been anticipated (see Mirand v City of New York, 84 NY2d at 49; Mayer v Mahopac Cent. School Dist., 29 AD3d at 654). Here, the School District failed to establish, prima facie, that this incident [*4]constituted an unforeseeable spontaneous act that could not have been prevented with sufficient instructions or proper supervision.
"Proper supervision depends largely on the circumstances surrounding the event" (Mirand v City of New York, 84 NY2d at 51; see Godoy v Central Islip Union Free Sch. Dist., 117 AD3d 901, 902; Mei Kay Chan v City of Yonkers, 34 AD3d 540, 541). The testimony indicated that speedball was new to the students; the infant plaintiff had only played it on one other day; and the gym class on the day of the accident was larger than usual, consisting of all male students from two separate gym classes, rather than the usual smaller coed class. Moreover, the deposition testimony of the parties and the gym teacher reveal that there are triable issues of fact as to whether the gym teacher provided adequate supervision during the game (see Godoy v Central Islip Union Free Sch. Dist., 117 AD3d at 902; Mei Kay Chan v City of Yonkers, 34 AD3d at 541; Merkley v Palmyra-Macedon Cent. School Dist., 130 AD2d at 938). Although the gym teacher testified that he provided adequate supervision during the game, he testified that he was not aware of which student tripped the infant plaintiff and, as noted above, the infant plaintiff testified in 2010 and 2012 that the gym teacher was on the other side of the gym when the incident happened, talking to students on the bleachers (see Maneri v Patchogue-Medford Union Free Sch. Dist., 121 AD3d 1056, 1057; Godoy v Central Islip Union Free Sch. Dist., 117 AD3d at 902).
The School District also failed to eliminate all triable issues of fact as to whether the gym teacher provided sufficient instruction to the students prior to the game as to how to safely play the game (see Mei Kay Chan v City of Yonkers, 34 AD3d at 541; Merkley v Palmyra Macedon Cent. School Dist., 130 AD2d at 938). Although the gym teacher testified that he provided appropriate instructions to guide the students' conduct during play, the deposition testimony of both the infant plaintiff and Maher conflicts with his contention. Crediting the testimony of the infant plaintiff, a triable issue of fact exists concerning the adequacy of the gym teacher's instructions to the students as to how to conduct themselves when two students track the same ball after the tip-off (see Mei Kay Chan v City of Yonkers, 34 AD3d at 541; Merkley v Palmyra Macedon Cent. School Dist., 130 AD2d at 938).
The affidavit of a physical education expert, submitted by the School District, who did not observe the supervision or instructions provided by the gym teacher on the day of the incident, did not eliminate the triable issues of fact as to the sufficiency of the supervision and instructions (Nocella v Fort Dearborn Life Ins. Co. of N.Y., 99 AD3d 877, 878-879).
Maher also failed to establish his prima facie entitlement to judgment as a matter of law. He argued both in the Supreme Court and on appeal that he was entitled to judgment as a matter of law based on the defense of primary assumption of risk and, in support of his motion for summary judgment, submitted the testimony of the parties, as well as that of their gym teacher. The doctrine of primary assumption of risk is wholly inapplicable to this case, as the infant plaintiff was participating in a compulsory physical education class, not a voluntary interscholastic sports activity (see Smith v J.H. West Elementary School, 52 AD3d 684, 685).
Moreover, Maher also failed to eliminate all triable issues of fact as to the plaintiffs' allegations that he either negligently or recklessly caused the infant plaintiff's injury. To establish his prima facie entitlement to judgment as a matter of law on this issue, Maher was required to eliminate all triable issues of fact as to whether he had deviated "from the degree of care expected of a child of similar age, intelligence, and experience in participating in the gym class" (Opalek v West Islip Union Free School Dist., 1 AD3d 491, 492). Maher failed to do so. Maher's testimony that he was unaware that the incident had happened was insufficient to eliminate the triable issues of fact raised by the infant plaintiff's testimony as to whether Maher's actions were negligent or reckless, as he was unable to testify as to how the incident happened. Moreover, neither Maher nor the gym teacher disputed the infant plaintiff's contention that the students had been instructed that speedball was a no-contact sport and that the students were not allowed to take a ball from another player. The conflicting deposition testimony of the gym teacher, who said that he observed an "accidental trip" as the infant plaintiff and another student went for the ball, with that of the infant plaintiff, who testified that Maher, an aggressive player who had previously knocked another student [*5]to the ground, blocked his foot, causing him to trip while going for the ball, presents credibility issues for a jury to determine (see Dykeman v Heht, 52 AD3d 767, 770; Williams v Bonowicz, 296 AD2d 401, 401).
Given that the defendants failed to establish their prima facie entitlement to judgment as a matter of law, the sufficiency of the plaintiffs' opposition papers need not be considered (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853). Accordingly, under the totality of the circumstances presented here, I would affirm the Supreme Court's order denying summary judgment to each of the defendants.
ENTER:
Aprilanne Agostino
Clerk of the Court