| **Hobbins v Flatlands Mgt. Co.** |
|:---:|
| 2025 NY Slip Op 31627(U) |
| April 30, 2025 |
| Supreme Court, Kings County |
| Docket Number: Index No. 516171/16 |
| Judge: Carolyn E. Wade |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 84 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Brooklyn, New York on the 30ᵗʰ
day of April, 2025.

PRESENT:
HON. CAROLYN E. WADE,
                                    Justice
-------------------------------------------------------------------X
VERNA HOBBINS,

                                    Plaintiff,                          Index No. 516171/16

                    -against-                                          **DECISION AND ORDER**

FLATLANDS MANAGEMENT COMPANY;                              Mot. Seq. No. 13-15
INITIAL REALTY, INC., c/o PRIME REALTY CO.;
SUN BEAUTY SUPPLY; SUN BEAUTY SUPPLY LLC;
HYUN S. KIM; and TAEK K. KIM;

                                    Defendants.
-------------------------------------------------------------------X

   Recitation, as required by CPLR 2219 (a), of the electronic papers considered in the review
of: (1) the summary judgment motion of defendants Sun Beauty Supply, Sun Beauty Supply LLC,
Hyun S. Kim, and Taek K. Kim; (2) the summary judgment cross-motion of defendants Flatlands
Management Co. (sued herein as Flatlands Management Company) and Prime Realty Properties
and Management Inc. (sued herein as Prime Realty Co. and Initial Realty Co., also sued herein as
Initial Realty, Inc.); and (3) plaintiff's motion for an order striking defendants' respective answers
or, in the alternative, precluding each set of defendants from testifying or presenting certain
evidence at trial:

| | |
|---|---|
| Notice of Motion/Cross-Motion, Affirmations, and Exhibits Annexed........ | 237-251; 254-260, 270-272 |
| Opposing Affirmations and Exhibits Annexed.............................................. | 262-263; 274 |
| Reply Affirmations........................................................................................ | 265-266; 275-278 |
| Proposed Orders........................................................................................... | 280-283; 285; 286 |

   Upon the foregoing papers and after oral argument, the joint motion of Sun Beauty

Supply, Sun Beauty Supply LLC, Hyun S. Kim, and Taek K. Kim (collectively, the

"Tenant Defendants"), and the joint cross-motion of defendants Flatlands Management

Co. (sued herein as Flatlands Management Company) and Prime Realty Properties and

Management Inc. (sued herein as Prime Realty Co. and Initial Realty Co., also sued

herein as Initial Realty, Inc.) (collectively, the "Landlord Defendants"), in each instance,

move for an order, pursuant to CPLR 3212, granting them summary judgment dismissing

all claims and cross-claims; together with the motion of plaintiff Verna Hobbins

[* 1]

("Plaintiff") for an order, pursuant to CPLR 3126, striking the respective answers of the Tenant Defendants and Landlord Defendants (collectively, "Defendants") for their alleged spoliation of evidence and for an award of ancillary relief; are decided as follows:

## Background

On a sunny afternoon of Wednesday, September 18, 2013, Plaintiff, age 60, allegedly tripped and fell on the entry mat that was duct-taped to the concrete sidewalk (the "mat") in front of — and as she was about to enter through the already opened door of — the Sun Beauty Supply store (the "store") in Brooklyn, New York (the "accident"). Defendant Taek K. Kim ("Taek") was the store owner through Defendants Sun Beauty Supply and Sun Beauty Supply LLC, but was not working in the store on the date of the accident.[1] Taek's wife, Defendant Hyun S. Kim ("Hyun"), worked as a cashier inside the store on the date of the accident. Hyun saw through the front store window as Plaintiff was walking toward the store, but she did not witness the accident.[2] Hyun testified that Plaintiff refused medical help, and that no ambulance or police were summoned to the scene of the accident. Defendant Flatlands Management Co., as an out-of-possession landlord, owned the property in which the store was located, whereas Defendant Prime Realty Properties and Management Inc. acted as the managing agent for the store property.

The store owner, Defendant Taek, described the mat as a rectangle measuring 2 feet in width by 4 feet in length, with $1/4^{th}$ inch (or 7 millimeters) in thickness, made

---

[1] Taek's EBT transcript, page 83, lines 3-12.
[2] Hyun's EBT transcript, page 42, line 3 to page 43, line 12.

[* 2]

entirely of rubber, and weighing approximately 20 pounds.[3] He had cut the mat out of a roll of black rubber, placed it in front of the store (with the posterior portion of the mat extending into the doorway of the store[4]), and secured it to the adjacent concrete sidewalk by taping all its four sides with a duct tape.[5] During his 18-year ownership of the store from 2000 until April 2018, the original mat and its subsequent replacements (with one of such replacements having been performed in 2010 before the accident at issue[6]) had remained duct-taped in front of the store. Taek and Hyun periodically (or at least once per annum[7]) replaced the duct tape when it became soiled.[8] When Taek sold the store to an unrelated individual in April 2018 (or approximately 20 months after the inception of this action in September 2016), the mat was lost.[9]

Plaintiff testified at her pretrial deposition that while she did not observe the condition of the mat and duct tape before her fall,[10] she noticed *after* her fall that "the

---

[3] Taek's EBT transcript, page 73, lines 12-15; page 76, line 14 to page 77, line 24; page 107, lines 16-18.

[4] Taek's EBT transcript, page 109, line 20 to page 110, line 20.

[5] Taek's EBT transcript, page 78, lines 3-19.

[6] Taek's EBT transcript, page 74, lines 9-24; page 75, lines 4-23; page 76, lines 5-13; page 79, lines 11-13.

[7] Taek's EBT transcript, page 81, lines 3-4.

[8] Hyun's EBT transcript, page 66, line 18 to page 67, line 10.

[9] Taek's EBT transcript, page 102, lines 13-16.

[10] Plaintiff's EBT transcript, page 30, lines 11-13 ("*Q. Prior to your accident[,] did you look at the [mat]? A. No.*"); page 30, lines 16-19 ("Q. When did you first notice the [mat] on the date of your accident? A. I was lifted up [helped me get up]. I fell and I was lifted up [helped me get up]. I looked back."); page 30, line 20 to page 31, line 3 ("Q. When did you first notice the tape on the date of your accident? A. After I was [helped me get up,] I looked back. Q. There is after you fell you looked back; is that correct? A. After I fell somebody [helped me get up,] and I looked back."); page 31, lines 4-12 ("Q. After you looked back after your fall you were [helped get up] and you looked back. What did you see? My understanding is [that] a part of the [mat] wasn't taped; is that correct? . . . A. Yes."); page 49, line 19 to page 50, line 6 ("*Q. Prior to your fall[,] where were you looking? . . . A. I was looking at the door to go into the store, that door that was already opened.*"); page 222, line 2 to page 223, line 6 ("Q. As you got to [the store] and you were a couple of steps away from [store] were you able to see the [mat] on the ground? A. I was not looking down. . . . *Q. Were you able to see the [mat] as you were walking? A. I was not looking for the [mat].* . . . Q. As you were walking towards [the store], did you see the [mat]? A. . . I was not looking down. I was looking towards the door to go in[to] . . . the [store]. *Q. Is your answer that you did not see the [mat]? A. My answer is that I was not looking for the [mat]. I was not looking down.*"); page 234, lines 14-16 ("Q. You first saw that tape after you had fallen; correct. A. Yes."); page 250, line 20 to page 252, line 4 ("Q. . . [I]s this the first time [you] saw the [mat] was not flat [,] was when [you were] leaving the store [after the accident]? A. It's the first time. . . (footnote continued)

[* 3]

corner of the left and the front [of the mat] was lifted. There was no [duct] tape. The [duct] tape was loose."[11] She testified that the front left corner of the mat "must have" been (ipso facto) untaped *before* her fall "[b]ecause [she] tripped."[12] Later in her pretrial testimony, she clarified that although *the front left corner of the mat* was flat,[13] the duct tape in that area of the mat was missing,[14] causing her left foot to get "caught [in that area of the] mat"[15] and to fall.[16]

---

. . [reiterating] It's the first time. . . . I did see the [mat] flipped over. . . . There was no tape there."); page 252, lines 19-22 ("*Q. . . [A]s you were leaving the store [after the accident] what was the condition of the left corner of the [mat]? A. The tape was missing.*") (emphasis added in each instance).

[11] Plaintiff's EBT transcript, page 26, lines 8-15. *See* Plaintiff's EBT transcript, page 32, lines 3-4 ("*Q. The front left corner [of the mat]? A. Was not taped.*"); page 33, lines 2-5 (Q. . . . The six inches on the left and the six inches in the front [of the mat], that whole area [of the mat] was lifted[,] or a different part? A. That part."); page 34, lines 9-10 ("Q. How was it lifted? A. I don't know. . ."); page 34, line 24 to page 35, line 3 ("Q. When you say [']lifted['] what do you mean by that? A. It wasn't stuck to the ground. . ."); page 35, lines 4-11 ("*Q. What was the condition of that area that was not taped, the condition of the [mat]? A. . . It was lifted. It was a piece of [mat] on the ground*[]. . ."); page 35, lines 13-15 ("Q. How far off the ground was it lifted? A. I don't know.") (emphasis added in each instance).

[12] Plaintiff's EBT transcript, page 49, lines 8-18 ("Q. And the front part of your [left] foot came in contact with – what did it come in contact with to cause you to fall? A. *The [mat] that was not taped. The end of the [mat] that was not taped.* Q. Did your front foot go under the [mat] at any time? A. I don't know. All I know I tripped. It must have. *Q. Why do you say it must have? A. Because I tripped.*"); page 229, lines 10-13 ("My right foot went on the part of the [mat] that was down. My left [or trailing] foot went on the mat that was up[,] and I fell.."); page 232, lines 8-25 ("Q. Both feet were on the [mat] then when the accident happened? A. No. [My left foot] was under the edge. . . [My left foot] got caught under the edge. . . . [My] . . . [right] foot was . . . in the store. Q. . . Your . . . [right] foot was already in the store? A. I have put . . . [my right] foot on the threshold. I put my [right] foot there and . . . [my left] foot got caught in the [mat] and I fell into the store."); page 249, lines 16-25 ("Q. When your [left] foot went under the [mat,] how much of your [left] foot went under the [mat]? Was it just your toes? Did it go further up your [left] foot? Was it the beginning of your toes? How much of your [left] foot went under the [mat]? A. I do not recall. All I know my [left] foot hit the thing. I was [lying] up. How much of my [left] foot went under there[,] I don't know.") (emphasis added in each instance).

[13] Plaintiff's EBT transcript, page 253, line 20 to page 254, line 13 ("Q. Was the left corner of the [mat] flat on the ground as you exited the store [after the accident]? . . . A. . . . . *The tape was missing from the edge of the [mat]. . . [The front left corner of the mat] may have been flat but there was no tape there. Therefore[,] if I'm walking and my [left] foot hit that[,] I'm going to fall. . .*) (emphasis added).

[14] Plaintiff's EBT transcript, page 253, lines 4-6 ("*If the tape was not missing[,] my [left] foot would not have been caught at the left front corner [of the mat,] and I would not have tripped.*"); page 253, lines 17-18 ("*The tape was missing.*") (emphasis added in each instance).

[15] Plaintiff's EBT transcript, page 233, lines 2-14 ("Q. Your [right] foot was already ahead going into the store when the other [left] foot got caught on the [mat]? A. Yes. Q. When [your left] foot got caught on the corner of the [mat] before you started to fall[,] did you look to see what was catching your [left] foot? A. No. It happened in an instant. Q. Other than your [left] foot getting caught on that [mat,] was there anything else that contributed to your fall? A. No. I don't think so.").

[16] In the past, Plaintiff occasionally visited the store to buy hair extensions, although she denied observing the mat (or its duct tape) during any of her prior visits to the store (Plaintiff's EBT transcript, page 219, lines 3-6; page 219, line 25 to page 220, line 3; page 221, lines 6-9).

4

[* 4]

At Plaintiff's request, her friend took a color photograph of the mat, duct tape, and scene of the accident minutes after its happening (the "accident-scene photograph").[17] Plaintiff (and, independently, Hyun[18]) identified the accident-scene photograph as an accurate depiction of the mat and duct tape at the time and place of the accident.[19] The accident-scene photograph (which is part of the record and which the Court reviewed) shows that: (1) the front portion of the mat is lying flat on the sidewalk, with none of its three visible edges (front center, left side, and right side) raised; and (2) the entire front left corner of the mat is secured to the sidewalk with duct tape.

The narrative of the events would not be complete without reciting Hyun's pretrial testimony that she inspected the mat, duct tape, and store entrance at least twice on the day of (and before) the accident.[20] Hyun testified that, as part of her daily routine of cleaning the store sidewalk,[21] she regularly swept the mat and duct tape with a broom.[22]

On September 14, 2016 (or nearly three years after the accident), Plaintiff commenced the instant action. Each set of Defendants interposed their respective answers. On January 17, 2023, the Tenant Defendants moved for summary judgment in Seq. No. 11 (the "Tenant Defendants' prior motion").[23] Plaintiff objected to the Tenant

---

[17] Plaintiff's EBT transcript, page 56, line 21 to page 58, line 23; page 240, line 18 to page 241, line 7. After walking out of the store following her accident, Plaintiff asked her friend who, at the time, was in a beauty salon two stores away, to photograph the scene of the accident (*see* Plaintiff's EBT transcript, page 57, line 25 to page 59, line 2). The accident-scene photograph in the record before the Court is the photograph which Plaintiff's friend took at Plaintiff's request. The accident-scene photograph is annexed as Exhibit A to Plaintiff's EBT transcript at NYSCEF Doc No. 245 and is separately filed as a standalone document under NYSCEF Doc No. 220.

[18] Hyun's EBT transcript, page 46, line 3 to page 50, line 3; page 50, line 24 to page 51, line 5.

[19] Plaintiff's EBT transcript, page 60, line 4 to page 61, line 3; page 63, line 22 to page 64, line 14; page 66, lines 20-23; page 67, lines 6-8; page 75, line 17 to page 76, line 16.

[20] Hyun's EBT transcript, page 69, lines 5-10; page 70, lines 5-23.

[21] Hyun's EBT transcript, page 75, lines 6-24; page 89, line 4 to page 90, line 14.

[22] Hyun's EBT transcript, page 71, lines 17-23; page 72, line 11-17; page 74, lines 11-13.

[23] Notice of Motion, dated January 16, 2023, and accompanying filings (NYSCEF Doc Nos. 203-216).

5

Defendants' prior motion.[24] Thereafter, on October 16, 2023, the Landlord Defendants cross-moved for summary judgment in Seq. No. 12 (the "Landlord Defendants' prior cross-motion").[25] One month later on November 16, 2023, Plaintiff filed a Note of Issue and a Certificate of Readiness for Trial (collectively, "NOI").[26] On January 31, 2024, Plaintiff objected to the Landlord Defendants' prior cross-motion.[27] On February 6, 2024, the Tenant Defendants and Landlord Defendants separately replied to Plaintiff's oppositions to their prior motion or cross-motion, respectively.[28] On February 7, 2024 at 9:30 a.m., which was the scheduled appearance date for the Tenant Defendants' prior motion and the Landlord Defendants' prior cross-motion in Part 84, the Tenant Defendants' counsel failed to appear. Thereupon, the Tenant Defendants' prior motion was marked off the motion calendar, whereas the Landlord Defendants voluntarily withdrew their prior cross-motion before the Court's determination thereof.

On February 13, 2024 (which was only six days after their prior motion had been marked off), the Tenant Defendants served the instant motion for leave to renew their prior motion and, upon renewal, for summary judgment on their prior motion dismissing all claims and cross-claims against them (Seq. No. 13).[29] The Tenant Defendants contend

---

[24] Plaintiff's Affidavit in Opposition, dated July 21, 2023, and accompanying filings (NYSCEF Doc Nos. 219-223).

[25] Notice of Cross-Motion, dated October 13, 2023, and accompanying filings (all encompassed under NYSCEF Doc No. 225).

[26] To be precise, Plaintiff had previously filed a Note of Issue and a Certificate of Readiness of Trial on March 2, 2018, even though discovery remained outstanding at the time (the "prior NOI") (NYSCEF Doc No. 32). The Tenant Defendants promptly moved (in Seq. No. 2) to vacate the prior NOI. By central compliance-conference order, dated April 30, 2018, the Court (Schneier, J.), while declining to vacate the prior NOI, directed completion of the outstanding discovery (NYSCEF Doc No. 55). After the outstanding discovery was completed, Plaintiff filed the instant NOI on November 16, 2023 (NYSCEF Doc No. 227). The instant NOI superseded the prior NOI.

[27] Plaintiff's Affidavit in Opposition, dated January 31, 2024 (NYSCEF Doc No. 229).

[28] Tenant Defendants' Reply Affirmation, dated February 6, 2024, and the accompanying filing (NYSCEF Doc Nos. 231-232); Landlord Defendants' Attorney's Affirmation in Response to Plaintiff's Affidavit in Opposition to Cross-Motion, also dated February 6, 2024, and the accompanying filing (NYSCEF Doc Nos. 234-235).

[29] Notice of Motion, dated February 13, 2024, and the accompanying filings (NYSCEF Doc Nos. 237-251).

6

[* 6]

that they are entitled to summary judgment for one or more of the following reasons: (1) they did not create, nor did they have notice of the allegedly defective or dangerous condition before the accident; (2) the mat and duct tape were readily observable and were not inherently dangerous on the day of the accident; and (3) Plaintiff was speculating as to the cause of her accident.[30] On May 24, 2024, the Landlord Defendants (in lieu of their previously withdrawn prior cross-motion) served the instant cross-motion for summary judgment dismissing all claims and cross-claims against them (Seq. No. 14).[31] The Landlord Defendants incorporate by reference in their cross-motion all the arguments for dismissal which the Tenant Defendants concurrently advance in support of the latter's motion.[32]

In addition to opposing the instant motion and cross-motion, Plaintiff served her motion to strike Defendants' respective answers and for ancillary relief on June 4, 2024 (Seq. No. 15).[33] Therein, Plaintiff raised for the first time in this action that the mat and duct tape, though remaining in existence for "more than five years after the accident and almost three years after the action [was] commenced [in September 2016 and until the store was sold in April 2018,] had not been preserved for inspection."[34] After oral argument held on October 2, 2024, the Court reserved decision on the Defendants' instant summary judgment motion and cross-motion, as well as on Plaintiff's motion to strike and for ancillary relief.

---

[30] Affirmation in Support of Motion, dated February 13, 2024, ¶¶ 7-9 (NYSCEF Doc No. 238).

[31] Notice of Cross-Motion, dated May 24, 2024, and the accompanying filings (NYSCEF Doc Nos. 254-260).

[32] Attorney's Affirmation in Support of Cross-Motion, dated May 24, 2024, ¶ 10 (NYSCEF Doc No. 256).

[33] Notice of Motion to Strike/Preclude, dated June 4, 2024, and the accompanying filings (NYSCEF Doc Nos. 270-272).

[34] Affirmation in Support, dated June 3, 2024, ¶ 4 (NYSCEF Doc No. 271).

[* 7]

## Discussion

"In a . . . [trip and fall] case, a defendant moving for summary judgment has the initial burden of establishing, prima facie, that it neither created the dangerous condition nor had actual or constructive notice of its existence for a sufficient length of time to discover and remedy it" (*Rogers v Bloomingdale's, Inc.*, 117 AD3d 933, 933 [2d Dept 2014]). "A plaintiff's inability to identify what had caused him or her to fall is fatal to his or her case, and a defendant moving for summary judgment dismissing the complaint can meet its initial burden as the movant simply by demonstrating that the plaintiff did not know what had caused him or her to fall" (*Kudrina v 82-04 Lefferts Tenants Corp.*, 110 AD3d 963, 964 [2d Dept 2013]).

Here, Defendants have established their respective prima facie entitlement to judgment as a matter of law by submitting the transcript of Plaintiff's deposition (as excerpted in the text and in the footnotes above), during which she testified that she did not notice the mat or duct tape at any time *before* her fall, and that it was only *after* she fell, that she observed that the front left corner of the mat was allegedly missing the duct tape (*see Giannotti v Hudson Val. Fed. Credit Union*, 133 AD3d 711, 712 [2d Dept 2015]; *Winder v Exec. Cleaning Servs., LLC*, 91 AD3d 865, 866 [2d Dept 2012], *lv denied* 9 NY3d 811 [2012]). Defendants have also submitted Hyuan's pretrial testimony who testified that: (1) on the day of (and before) the accident, she did not see any defective condition with respect to the mat or duct tape; and (2) she inspected the mat and duct tape on two occasions on the day of (and before) the accident (*see Giannotti*, 133 AD3d at 712; *Denker v Century 21 Dept. Stores, LLC*, 55 AD3d 527, 528 [2d Dept 2008]). Defendants have further submitted the accident-scene photograph which

8

[* 8]

contradicts Plaintiff's attribution of the cause of her accident to the allegedly missing duct tape in the front left corner of the mat, and which fails to show that the mat and duct tape were in any way defective immediately after the accident (*see Giannotti*, 133 AD3d at 712; *Leary v Leisure Glen Home Owners Assn., Inc.*, 82 AD3d 1169, 1169-1170 [2d Dept 2011]).

In opposition, Plaintiff has failed to raise a triable issue of fact (*see Giannotti*, 133 AD3d at 712; *Williams v SNS Realty of Long Is., Inc.*, 70 AD3d 1034, 1035-1036 [2d Dept 2010]; *Denker*, 55 AD3d at 528; *Jacobsohn v New York Hosp.*, 250 AD2d 553, 553-554 [1st Dept 1998]). Plaintiff's post-deposition affidavits both averring (in identical language) that "the edge of the [mat] was raised up from the sidewalk" and that "[her] left foot got caught on the untap[ed], raise[d] edge of the [mat],"[35] present a feigned issue of fact that is designed to avoid the consequences of her earlier deposition testimony that exclusively attributed the cause of her accident to the allegedly missing duct tape in the front left corner of the mat, and thus her affidavits are insufficient to defeat the motion and cross-motion (*see Meade v Hampton Diaries, Inc.*, 219 AD3d 1424, 1425 [2d Dept 2023]; *Theissen v 7-Eleven, Inc.*, 189 AD3d 1502, 1504 [2d Dept 2020]). Equally important, Plaintiff's affidavits contradict the accident-scene photograph which (as noted) shows that the front left corner of the mat was not missing any duct tape.

But there's more to Plaintiff's opposition. Her engineering expert (based on his review of the accident-scene photograph) has offered two alternative theories for the

---

[35] Plaintiff's Affidavit in Opposition to the Tenant Defendants' Prior Motion, dated July 21, 2023, ¶ 3 (NYSCEF Doc No. 263); Plaintiff's Affidavit in Opposition to the Landlord Defendants' Prior Cross-Motion, dated January 31, 2024, ¶ 3 (NYSCEF Doc No. 259).

9

[* 9]

cause of her accident. First, Plaintiff's expert opines that Plaintiff fell because the "duct tape [was] missing from *the middle of the bottom portion of the mat and [its] right [side]*,"[36] rather than from the front left corner of the mat. Second and independently of the foregoing, Plaintiff's expert opines that the mat presented a visual illusion/trap for pedestrians because of its own dark color in juxtaposition against the background of a similarly dark-colored column that was adjoining the store entrance.[37] The two competing "missing duct-tape" theories,[38] as augmented by the "visual illusion/trap" theory, would require the jury (should it be permitted to try the case) to impermissibly speculate as to the real cause of Plaintiff's fall (*see Lee v Intl. Preschools*, 170 AD3d 1091, 1091-1092 [2d Dept 2019]; *Ash v City of New York, Trump Vil. Section 3, Inc.*, 109 AD3d 854, 855 [2d Dept 2013]; *McFadden v 726 Liberty Corp.*, 89 AD3d 1067, 1068 [2d Dept 2011]; *Alabre v Kings Flatland Car Care Ctr., Inc.*, 84 AD3d 1286, 1287 [2d Dept 2011]; *Teplitskaya v 3096 Owners Corp.*, 289 AD2d 477, 478 [2d Dept 2001]). Under the circumstances, where there are several equally plausible explanations for the accident, and only speculation as to its real cause, Plaintiff has failed to raise a triable issue of fact to defeat Defendants' summary judgment motion and cross-motion (*see Hayden v Waldbaum, Inc.*, 63 AD3d 679, 679-680 [2d Dept 2009]; *Christopher v New York City Tr. Auth.*, 300 AD2d 336 [2d Dept 2002]; *see also Tamrazyan v 379 Ocean Parkway, LLC*, 232 AD3d 736, 737 [2d Dept 2024]; *Slattery v Tops Markets, LLC*, 147 AD3d 1504, 1504-1505 [4th Dept 2017]; *Kasner v Pathmark Stores, Inc.*, 18 AD3d

---

[36] Expert Affidavit of Daniel Jones, P.E., dated July 26, 2023, unnumbered page 4 (NYSCEF Doc No. 263) (emphasis added).

[37] Expert Affidavit of Daniel Jones, P.E., unnumbered page 3.

[38] The first "missing duct-tape" theory is based on the allegedly missing duct tape from the front left corner of the mat (as testified to by Plaintiff), whereas the second "missing duct-tape" theory is based on the allegedly missing duct tape from the middle of the bottom portion of the mat and its right side (as opined to by Plaintiff's expert).

[* 10]

440, 441 [2d Dept 2005]; *Scola v Sun Intl. N. Am.*, 279 AD2d 466, 467 [2d Dept 2001],

*lv denied* 97 NY2d 608 [2002]).

More fundamentally, "the mere placement of the mat by the front door of the

[store] was not an inherently dangerous condition" (*Leib v Silo Rest., Inc.*, 26 AD3d 359,

360 [2d Dept 2006]). Likewise, "[t]he mere happening of an accident, in and of itself,

does not establish liability of a defendant" (*Scavelli v Town of Carmel*, 131 AD3d 688,

690 [2d Dept 2015]). Rather, Plaintiff was required (but failed) to connect her injury to

a breach of duty by Defendants and to show that their acts or omissions were

"a substantial cause of the events which produced [her] injury" (*Derdiarian v Felix*

*Contr. Corp.*, 51 NY2d 308, 315 [1980], *rearg denied* 52 NY2d 784 [1980]).

Plaintiff's post-NOI motion for an order imposing sanctions on Defendants for

their alleged spoliation of the mat and duct tape is devoid of merit (*see Leib*, 26 AD3d at

360). Plaintiff has failed to establish that either set of Defendants intentionally or

negligently failed to preserve the mat and duct tape after the inception of this action (*see*

*Tanner v Bethpage Union Free School Dist.*, 161 AD3d 1210, 1211 [2d Dept 2018]).

Because of the availability of the post-accident photograph, Plaintiff also has failed to

demonstrate that the absence of the mat and duct tape fatally compromised her ability to

prove her claim (*see Sanders v 210 N. 12th St., LLC*, 171 AD3d 966, 969 [2d Dept 2019];

*Sarris v Fairway Group Plainview, LLC*, 169 AD3d 734, 736 [2d Dept 2019]; *Goll v*

*American Broadcasting Co., Inc.*, 10 AD3d 672, 673 [2d Dept 2004]).[39]

---

[39] Plaintiff's counsel's pre-litigation letters to each set of Defendants, dated November 12, 2013 and April 4, 2016, notifying them of a potential claim, failed to request preservation of the mat and/or duct tape (NYSCEF Doc No. 277) (*see De Abreu v Syed Restaurants Enters., Inc.*, 231 AD3d 1116, 1118 [2d Dept 2024]). In any event, assuming
(footnote continued)

11

[* 11]

Plaintiff's numerous procedural objections to the Tenant Defendants' and Landlord Defendants' respective motion and cross-motion have been considered and found to be without merit. Only a few of Plaintiff's objections require further discussion. The Tenant Defendants have demonstrated a reasonable excuse for their attorney's failure to appear for oral argument on the return date of their prior motion; they moved expeditiously (within an interval of only six days) to vacate their non-appearance default; there was no evidence that their counsel's non-appearance was willful or that Plaintiff was prejudiced by the delay; and the Tenant Defendants have demonstrated the meritorious nature of their prior motion, as discussed above (*see e.g. Hobbins v North Star Orthopedics, PLLC*, 148 AD3d 784, 787 [2d Dept 2017], *lv denied* 29 NY3d 913 [2017]). The Tenant Defendants' motion, though denominated as one for leave to renew, was, in actuality, one to vacate the calendar-call default (*accord Cordero v Mirecle Cab Corp.*, 51 AD3d 707, 708 [2d Dept 2008]). Further, the Landlord Defendants' cross-motion is not barred by the general proscription against entertaining successive motions for summary judgment (*see Sutter v Wakefern Food Corp.*, 69 AD3d 844, 845 [2d Dept 2010]) because it is substantively valid and was not previously entertained by the Court. Granting the Landlord Defendants' cross-motion (in conjunction with the Tenant Defendants' motion) "would further the interest of justice and eliminate an unnecessary burden on the courts" (*SC Park Lane II, LLC v Dickinson*, ___ AD3d ___, 2025 NY Slip Op 01964, *1-2 [2d Dept 2025]). The Landlord Defendants' cross-motion is timely (notwithstanding that it was served more than 60 days after the NOI) because it renewed

---

(without deciding) that Defendants were required, following the commencement of this action, to produce the mat and duct tape in discovery, Plaintiff waived Defendants' failure to so produce by moving for sanctions *after* the NOI (*see J.H. v City of New York*, 170 AD3d 816, 818 [2d Dept 2019]).

12

their contentions nunc pro tunc to their previously withdrawn, pre-NOI cross-motion (*accord U.S. Bank Nat. Assn. v Adler*, 148 AD3d 858 [2d Dept 2017]).

## Conclusion

Based on the foregoing and after oral argument, it is hereby

**ORDERED** that in Seq. No. 13, the Tenant Defendants' motion is **GRANTED**, and all claims and cross-claims against them are dismissed with prejudice and without costs/disbursements; and it is further

**ORDERED** that in Seq. No. 14, the Landlord Defendants' cross-motion is **GRANTED**, and all claims and cross-claims against them are dismissed with prejudice and without costs/disbursements; and it is further

**ORDERED** that in Seq. No. 15, Plaintiff's motion is **DENIED**; and it is further

**ORDERED** that the Tenant Defendants' counsel is directed to electronically serve a copy of this Decision and Order with notice of entry on the other parties' respective counsel and to electronically file an affidavit of said service with the Kings County Clerk; and it is further

**ORDERED** that in light of the dismissal of the entire action, the parties' next scheduled appearance in JCP-1 on June 2, 2025 at 10:00 a.m. is canceled.

This constitutes the Decision and Order of the Court.

E N T E R,

HON. CAROLYN E. WADE
SUPREME COURT JUSTICE

13

HON. CAROLYN E. WADE
JUSTICE OF THE SUPREME COURT

2025 MAY -2 A 8: 59
FILED
KINGS COUNTY CLERK

[* 13]