J.A. v City of New York

2026 NY Slip Op 02084

April 8, 2026

Appellate Division, Second Department

Voutsinas

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

J.A., etc., et al., appellants,

v

City of New York, et al., respondents, et al., defendant.

Supreme Court of the State of New York, Appellate Division, Second Judicial Department

Decided on April 8, 2026

2023-10940, (Index No. 700199/19)

Betsy Barros, J.P.

Linda Christopher

Barry E. Warhit

Helen Voutsinas, JJ.

Jonathan D'Agostino & Associates, P.C., Staten Island, NY (Edward J. Pavia, Jr., of counsel), for appellants.

Steven Banks, Corporation Counsel, New York, NY (Deborah A. Brenner and MacKenzie Fillow of counsel), for respondents.

Appeal by the plaintiffs, in an action to recover damages for personal injuries, etc., from an order of the Supreme Court (Kevin J. Kerrigan, J.), dated August 1, 2023, and entered in Queens County. The order, insofar as appealed from, granted that branch of the motion of the defendants City of New York, New York City Department of Education, and Catherine and Count Basie Middle School 72 which was for summary judgment dismissing the complaint insofar as asserted against the defendants New York City Department of Education and Catherine and Count Basie Middle School 72.

Voutsinas, J.

[*1]

This appeal concerns whether the defendants New York City Department of Education (hereinafter DOE) and Catherine and Count Basie Middle School 72 (hereinafter the school) demonstrated, prima facie, that they did not have adequate notice of the alleged verbal and physical harassment and physical assaults that the infant plaintiff, J.A., a student at the school, was being subjected to or that the steps these defendants took to supervise J.A. and protect him from harm were adequate. We conclude that the DOE and the school (hereinafter together the DOE defendants) failed to establish, as a matter of law, that they did not have sufficient notice of the harassment and assaults or that they took adequate steps to properly supervise and protect J.A. We also conclude that because of the continuing wrong doctrine, the notice of claim served by the plaintiffs was timely with respect to all of the allegations.

I. Factual and Procedural Background

The instant matter presents a case of harassment and assault of a student by other students at his school. J.A. allegedly was bullied by his fellow students throughout the 2017-2018 school year, while a student at a public middle school located in Queens. The incidents began in October 2017 and continued through May 2018. J.A. allegedly was repeatedly verbally and physically harassed and physically assaulted by other students. On October 6, 2017, while under the supervision of the DOE defendants, a classmate identified as N. punched J.A. in the head and face during recess. On February 7, 2018, another classmate, identified as R., called J.A. a racial slur, kicked him, and threatened to jump him if he told a teacher. On March 6, 2018, J.A. was at a nearby store off school grounds when another classmate, identified as A., pushed J.A. to the ground. On April 13, 2018, another classmate, identified as O., threw a crate of books at J.A.'s head and then punched him on the left and right sides of his face. On May 21, 2018, J.A. was physically assaulted in a classroom, injuring his left eye. As a result of these incidents, J.A. suffered injuries to both of his eyes, his head, his face, and his teeth.

On May 25, 2018, J.A., through his mother, filed a notice of claim encompassing all of these incidents, alleging that the defendants provided negligent supervision of J.A. On January 3, 2019, J.A., by his mother, and his mother (hereinafter the plaintiff mother) suing individually, [*3]commenced this action against the City, the DOE defendants, and another defendant, alleging, inter alia, negligent supervision.

J.A. testified at his deposition about the incidents with his classmates. In describing the physical assault by N., J.A. stated that he was sitting on a bench when he was punched in the head and face. When J.A. came to his senses after blacking out, he had ringing in his ears, had blurry vision, and was spitting blood. As to the physical assault by R., R. called J.A. a racial slur, then R. got out of his seat and kicked J.A. When J.A. told a teacher about the incident with R., the teacher seemed to dismiss J.A.'s report, stating that she "could not deal with crazy." Regarding the incident during which O. threw a crate of books at J.A.'s head and punched him, J.A. testified that he and O. did not say anything to one another prior to the crate being thrown. After that incident, J.A. went to the nurse. The nurse contacted J.A.'s parents, who picked him up from the school. J.A. did not speak to any teachers or school administrators about the incident prior to being picked up. Concerning the incident on May 21, 2018, in which his left eye was injured, J.A. had no recollection of what happened, including who hit him. J.A. testified that N., O., and the other classmates who harassed him were all friends who "hung out" together.

The plaintiff mother testified extensively at her deposition concerning the school's response to the verbal and physical harassment of J.A., including additional incidents. She testified that following many of the incidents, she had to initiate contact with school administrators to learn what had happened, and she was not otherwise informed of the incidents. The plaintiff mother testified that following the incident with O., during which the crate of books was thrown at J.A., she went to the school's office to see its principal, Omotayo Cineus. Initially, Cineus did not want to see the plaintiff mother, but she refused to leave until Cineus spoke to her.

The plaintiff mother further testified that following the incident with N., she left numerous messages with Cineus and Thompson Young, the school's former dean of students. Eventually, a meeting was held with Cineus, three or four teachers, J.A., the plaintiff mother, N., and N.'s mother "to address the situation and prevent anything further from happening." The plaintiff mother also testified that the school nurse called to inform the plaintiff mother that another student had spat on J.A. The plaintiff mother further testified that she was informed by Young that J.A. was spat on accidentally. However, the plaintiff mother testified that J.A. reported that he was spat on three days in a row by the same student. Moreover, that student, prior to spitting on J.A. again, had called him a "bombing nigger" and a "terrorist." The plaintiff mother could not recall the student's name. She testified that she had contacted the school about these additional spitting incidents and left messages, but she did not receive a call back. A few days later, while the plaintiff mother was leaving the school after trying to meet with Cineus or Young about the spitting incidents, she was threatened by a female student, who told the plaintiff mother that the female student would put the plaintiff mother in a neck cast.

The plaintiff mother also testified that prior to the incident in February 2018, J.A. was kicked by a different student, identified as T. This kicking incident occurred in math class, while a substitute teacher was out of the classroom, making copies. The plaintiff mother initially contacted the school about the incident but received no reply. She had to ask a teacher about the incident during a standard parent teacher conference a week or two later. The plaintiff mother further testified about an incident during which a student identified as R. had threatened to punch [*4]J.A., prior to assaulting him later that day on the way to a school bus, and stated that R.'s threat was heard by a teacher. She testified that there was no meeting at the school following the assault by R.

In addition, the plaintiff mother testified that she learned of the incident in which O. threw the crate of books at J.A. from the school nurse, not administrative staff. J.A. told his mother that prior to O. throwing the crate at him, R. had whispered something to O., who became enraged and threw the crate. The plaintiff mother also described the incident at the store, where A. threw J.A. to the ground. The plaintiff mother testified that it was her understanding that her son's assailants were all friends. In addition, she testified that she repeatedly called and visited a school district superintendent's office to initiate a safety transfer for J.A.

Clevelon Akil, who became the dean of students at the school in January 2018, testified that since she was not the dean at the time of the incident in October 2017, she only became aware of it by reviewing an incident report. Akil testified that in February 2018, she investigated the incident during which R. hit J.A. on the way to the school bus. Akil testified that she spoke with a teacher who was present during that incident, J.A., R., and the plaintiff mother. Akil further testified that she became aware of the prior incidents involving J.A. after reviewing incident reports. Akil testified that despite her knowledge of the assaults on J.A. and the prior incident reports, she did not believe that J.A.'s safety was at risk or that there was a safety issue, describing the occurrences as "incidents [that] happen in middle school constantly." Akil testified that she did not know whether a specific plan was devised for J.A.'s safety and stated that while she believed that J.A. was eventually transferred to a different class, she could not recall when the transfer occurred or if it was related to the incidents.

Cineus testified that, as principal, she was familiar with J.A. She further testified that she remembered the incident during which N. struck J.A. and recalled that, prior to that incident, N. had taken J.A.'s phone from his bag. Cineus stated that following the incident, both J.A.'s and N.'s families were contacted. Cineus also recalled the incidents in February 2018, March 2018, and April 2018, and testified that prior to the incident with O. in April 2018, J.A. allegedly had made a joke about O.'s recently deceased father.

Cineus testified that she met with the plaintiff mother regarding these incidents on only three occasions. Cineus further testified that the school moved J.A. to a different class and provided him with a paraprofessional in response to the concerns of the plaintiff mother. Cineus also permitted J.A. to eat lunch in the school office, and she spoke with the students in his classes about being kind to one another. Cineus, however, could not recall precisely when these actions took place.

Motion for Summary Judgment

In May 2023, the City and the DOE defendants moved for summary judgment, among other things, dismissing the complaint insofar as asserted against the DOE defendants. They contended, inter alia, that the plaintiffs' claims concerning any incidents prior to February 23, 2018, should be dismissed as time-barred because the plaintiff failed to comply with General Municipal Law § 50-e and that the plaintiffs' claims concerning the remaining incidents, sounding in negligent supervision, should be dismissed, because the DOE defendants provided adequate supervision.

The plaintiffs opposed that branch of the motion, contending, among other things, that the [*5]DOE defendants were on notice of all of the incidents in the notice of claim and had more than sufficient time to investigate the incidents. The plaintiffs contended that the notice of claim was timely because the repeated incidents fell within the continuing wrong doctrine. The plaintiffs further contended that after the incidents began, the DOE defendants failed to adequately supervise J.A.

In an order dated August 1, 2023, the Supreme Court, inter alia, granted that branch of the motion. The court concluded that the claims concerning incidents that occurred prior to February 24, 2018 (90 days before the notice of claim was filed), were barred by General Municipal Law § 50-e for failure to serve a timely notice of claim. With respect to the plaintiffs' claims premised upon the incident on March 6, 2018, which happened at a store near the school, the court determined that the DOE defendants were not responsible for protecting the plaintiff from incidents that occurred off school grounds. As to the remaining incidents, the court determined that J.A.'s alleged injuries were not a result of lack of supervision. The plaintiffs appeal.

II. Legal Analysis

A. The Timeliness of the Notice of Claim.

A plaintiff commencing an action against a school district must, as a condition precedent, serve a notice of claim upon the school district within 90 days of a cause of action accruing (see Education Law § 3813[2]; General Municipal Law § 50-e). The notice of claim provides a municipal agency, in this case the DOE, "with an opportunity to timely and effectively investigate the claim" (Stiff v City of New York, 114 AD3d 843, 843). "The test of sufficiency of a Notice of Claim is merely whether it includes information sufficient to enable the [municipality or agency] to investigate" (Brown v City of New York, 95 NY2d 389, 393 [internal quotation marks omitted]).

This Court holds that the notice of claim was timely because the continuing wrong doctrine applies (see Motta v Eldred Cent. Sch. Dist., 172 AD3d 1575). As a general rule, the continuing wrong doctrine may be "employed where there is a series of continuing wrongs and serves to toll the running of the limitations period to the date of the commission of the last wrongful act" (Garron v Bristol House, 162 AD3d 857, 858-859). The continuing wrong doctrine allows a later accrual date of a cause of action "where the harm sustained by the complaining party is not exclusively traced to the day when the original wrong was committed" (Capruso v Village of Kings Point, 23 NY3d 631, 639 [internal quotation marks omitted]). "The distinction is between a single wrong that has continuous effects and a series of independent wrongs" (York v York, 235 AD3d 1032, 1034 [internal quotation marks omitted]).

This Court has not previously addressed the question of whether the period within which a notice of claim may be filed is tolled where there is a continuous pattern of harassment and/or unlawful conduct in a school setting and allegedly negligent supervision of a student by school administrators charged with a duty to properly supervise their students. In Motta v Eldred Cent. Sch. Dist. (172 AD3d 1575, 1576-1577), a case factually similar to this one, the Appellate Division, Third Department, among other things, affirmed the Supreme Court's denial of a motion for summary judgment dismissing claims alleging negligence with respect to any incidents that occurred more than 90 days prior to the filing of a notice of claim. In Motta, the student was continually verbally taunted and harassed by the same group of students, he continually reported those incidents to school administrators, and the school was continuing to [*6]take action with regard to the student's complaints when the notice of claim was filed (see id. at 1577). The Motta Court found that "given the continuing nature of the alleged bullying and negligent supervision" and the fact that the defendant "had actual notice of the claim in time to properly investigate and obtain evidence," the notice of claim was timely with respect to all of the alleged incidents (id.).

This Court has, in analogous circumstances, concluded that a continuing violation tolls limitation periods. In Matter of Lozada v Elmont Hook & Ladder Co. No. 1 (151 AD3d 860, 861), this Court held that the continuing violation doctrine applied to a hostile work environment claim because that claim, by its very nature, was predicated on a series of separate acts that constituted an unlawful discriminatory practice. In so doing, this Court noted that "'[a] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice'" (id. at 861-862, quoting Clark v State of New York, 302 AD2d 942, 945).

Similarly, in the context of an employment discrimination action, the Appellate Division, First Department, has held that claims sounding in negligent supervision begin to accrue on the date of the last underlying act (see Pichardo v New York City Department of Education, 99 AD3d 606, 607).

Schools are obligated to provide students with a safe place to acquire an education. Children, on a daily basis, leave the safety of their homes to attend school, where their parents expect that they will be provided a safe place to grow and learn. While they have physical custody of these children, schools are said to act "in loco parentis," or in place of the parents, and in that role are required to provide the same protection and care for a child that a parent would provide (see e.g. Pratt v Robinson, 39 NY2d 554).

Here, J.A. was a student with an individualized education plan (hereinafter IEP) who is contending, in essence, that he was subjected to a hostile educational environment through repeated harassment and assaults. The record establishes that the faculty and administration of the school were on notice of the allegations of a continuous pattern of harassment and assaults. The deposition testimony of Akil, Cineus, and the plaintiff mother indicates that the school had notice of every incident, which were recorded in the school's incident reporting system. Moreover, the plaintiff mother testified that she repeatedly contacted the DOE defendants to express her concerns for J.A.'s safety. Under these circumstances, the continuing wrong doctrine applies. The time period for the plaintiffs to file their notice of claim regarding all of the incidents began to run when the last incident occurred in May 2018. Furthermore, as discussed more fully below, questions of fact exist concerning whether the DOE defendants acted appropriately to adequately supervise J.A., given the DOE defendants' notice and knowledge. In addition, because the DOE defendants allegedly were aware of a continuing pattern of harassment, they had ample time to properly investigate the plaintiffs' claims and to obtain evidence. Accordingly, the Supreme Court erroneously concluded that the claims based on incidents that occurred outside the 90-day period prior to the filing of the notice of claim were time-barred (see Motta v Eldred Cent. Sch. Dist., 172 AD3d 1575).

B. The DOE Defendants' Supervision of J.A.

As a threshold matter, to the extent that the plaintiffs allege damages for any injuries that [*7]occurred off school grounds, including any injuries resulting from the incident on March 6, 2018, which occurred at a nearby store, J.A. was no longer in the DOE defendants' custody and/or under their control during that incident. Accordingly, the DOE defendants cannot be liable for injuries arising from alleged incidents which occurred off school grounds (see Donofrio v Rockville Ctr. Union Free Sch. Dist., 149 AD3d 805).

1. Notice to the DOE Defendants

"Schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (Mirand v City of New York, 84 NY2d 44, 49). "'[I]n determining whether the duty to provide adequate supervision has been breached in the context of injuries caused by the acts of fellow students, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably be anticipated'" (A.P. v John W. Lavelle Preparatory Charter Sch., 228 AD3d 138, 150, quoting Mirand v City of New York, 84 NY2d at 49). "Actual or constructive notice to the school of prior similar conduct is generally required, and injury caused by the 'impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act'" (J.S. v Ramapo Cent. Sch. Dist., 205 AD3d 947, 948, quoting Mirand v City of New York, 84 NY2d at 48). "To find that a lack of adequate supervision is a proximate cause of a student's injury, it must be established that school authorities had sufficiently specific knowledge or notice of the dangerous conduct which causes the injury" (B.J. v Board of Educ. of the City of N.Y., 172 AD3d 693, 694 [alteration and internal quotation marks omitted]).

Here, viewing the evidence in the light most favorable to the plaintiffs as the non-moving parties (see Qureschi v Gleason, 231 AD3d 878, 879), the DOE defendants failed to establish, prima facie, that they did not have specific knowledge or notice of the dangerous conduct of J.A.'s classmates such that the acts that led to his injuries could not have been reasonably anticipated. As set forth in the discussion of the timeliness of the notice of claim, the DOE defendants had notice of the incidents that targeted J.A. On behalf of these defendants, Akil and Cineus testified that they were aware of the specific incidents wherein J.A. was assaulted and harassed. Moreover, the testimony of the plaintiff mother details the repeated instances when she either contacted school administrators to report incidents herself or was contacted by school employees other than the administrators concerning incidents involving J.A. She also testified that she and Young discussed that the students who were harassing J.A. all belonged to the same group of friends.

The evidence submitted in support of the motion clearly demonstrated that the DOE defendants had actual notice of the prior similar conduct by J.A.'s classmates and the continued verbal and physical harassment of J.A., which gave the DOE defendants an opportunity to take proper measures to protect J.A. while he was attending the school (see J.S. v Ramapo Cent. Sch. Dist., 205 AD3d at 949; see also Nizen-Jacobellis v Lindenhurst Union Free Sch. Dist., 191 AD3d 1007). Since the DOE defendants failed to demonstrate their prima facie entitlement to judgment as a matter of law dismissing the complaint insofar as asserted against them based on lack of notice, this Court need not consider the sufficiency of the plaintiffs' submission in opposition (see Alvarez v Prospect Hosp., 68 NY2d 320, 324-325).

2. The Adequate Supervision of J.A.

In examining the question of whether J.A. was adequately supervised, that determination "'depends largely on the circumstances attending the event'" (Sclafani v Young Adult Inst., Inc., 240 AD3d 816, 817 [internal quotation marks omitted], quoting Mei Kay Chan v City of Yonkers, 34 AD3d 540, 541). "The adequacy of a school's supervision of its students is generally left to the trier of fact to resolve, as is the question of whether inadequate supervision was the proximate cause of the plaintiff's injury" (id. at 817-818 [internal quotation marks omitted]; see also L.S. v Massapequa Union Free Sch. Dist., 215 AD3d 708).

Here, viewing the evidence in the light most favorable to the plaintiffs as the non-moving party (see Qureschi v Gleason, 231 AD3d 878, 879), the DOE defendants failed to establish, prima facie, that they provided adequate supervision to J.A. (see Sclafani v Young Adult Inst., Inc., 240 AD3d at 818).

The record is replete with allegations of the DOE defendants' indifference to the alleged wrongful actions of J.A.'s classmates. For example, the incident in which J.A. was spat on was described as accidental, and when J.A. attempted to report the incident during which he was kicked in class, a teacher dismissed him by saying that she "could not deal with crazy." The school had knowledge of these repeated incidents, yet Akil, the dean, testified that she did not believe that J.A.'s safety was at risk or that there was a safety issue, describing J.A.'s experiences as incidents that "happen in middle school constantly." There is no indication in the record that any plan was devised for J.A.'s safety. Akil believed that J.A. was transferred to another class, however she could not recall when J.A. was transferred or whether it was related to the incidents. Cineus confirmed that J.A. was moved to another class and also testified that J.A. was provided with a paraprofessional. The record is unclear, though, as to whether the paraprofessional was provided based on J.A.'s IEP or as a result of the harassment and assaults he experienced. Cineus further testified that J.A. was permitted to eat lunch in the school office. However, other than providing J.A. with the paraprofessional and the option to eat lunch in the school office, there is no evidence presented to show what actions the DOE defendants took to protect J.A. Moreover, there is no evidence in the record demonstrating that the DOE defendants consequated the students allegedly harassing J.A. in an effort to stop their pattern of harassing and assaultive behavior, other than Cineus stating that she spoke to all of the students in J.A.'s classes and asked them to be kind to one another.

Under these circumstances, the DOE defendants failed to establish that any lack of supervision on their part was not a proximate cause of J.A.'s injuries (see RT v Three Village School Central School District, 153 AD3d 747). Significantly, the deposition testimony of the school employees, including regarding their failure to prepare an individual safety plan for J.A., failed to eliminate triable issues of fact concerning whether the DOE defendants took adequate steps to supervise the plaintiff and prevent the incidents that led to J.A.'s injuries (see Sclafani v Young Adult Institute, Inc., 240 AD3d at 818; J.S. v Ramapo, 205 AD3d at 949; Nizen-Jacobellis v Lindenhurst Union Free School District, 191 AD3d at 1008). Instead, the evidence indicates that despite their notice and knowledge, employees of the DOE defendants were indifferent to the harassment that J.A. was enduring, describing the incidents as merely the type that happen constantly at a middle school and testifying that they did not believe J.A.'s safety was at risk.

Given that the DOE defendants failed to demonstrate their prima facie entitlement to [*8]judgment as a matter of law dismissing the complaint insofar as asserted against them based on a showing that they provided J.A. with adequate supervision, this Court need not consider the sufficiency of the plaintiffs' opposition papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324-325).

III. Conclusion

Accordingly, the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the City and the DOE defendants which was for summary judgment dismissing so much of the complaint as was predicated on alleged incidents which occurred on school grounds, insofar as asserted against the DOE defendants, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from.

BARROS, J.P., CHRISTOPHER and WARHIT, JJ., concur.

ORDERED that the order is modified, on the law, by deleting the provision thereof granting that branch of the motion of the defendants City of New York, New York City Department of Education, and Catherine and Count Basie Middle School 72 which was for summary judgment dismissing so much of the complaint as was predicated on alleged incidents which occurred on school grounds, insofar as asserted against the defendants New York City Department of Education and Catherine and Count Basie Middle School 72, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, with costs to the plaintiffs.

ENTER:

Darrell M. Joseph